DISBROW v. DISBROW et al.

(Supreme Court, Appellate Division, First Department. December 15, 1899.)

**1. TRUSTEES—REMOVAL—ILL FEELING.**
     A trustee may be removed merely because of ill feeling between himself
and a co-trustee and the cestui que trust, though he is guilty of no mis-
management or misconduct.

**2. SAME—ACCOUNTING.**
     The accounts of a trustee named in a deed by heirs to take charge of
inherited real estate should not be surcharged with the amount of premiums
paid for insurance on the property in excess of its selling value, where
the amount of insurance was the same as that which the ancestor and heirs
had previously procured, and the property had not depreciated in value.

**8. SAME.**
     The accounts of a trustee should not be surcharged with the amount of
penalties incurred for his failure to pay taxes promptly, where the failure
was occasioned by the cestui que trust's demanding and obtaining the use
of funds available for the prompt payment of taxes.

**4. SAME.**
     The fact that a cestui que trust of real estate objected to the making of
repairs thereon by the trustee will not preclude the trustee from receiving
credit for the expense of such repairs, where they were necessary to put

the property in a tenantable condition, and were beneficial to the cestui que trust.

5. SAME.

On a trustee's accounting, the mere fact that he paid more for repairs than a neighbor paid for similar work is an insufficient ground for surcharging his account with the difference, where the one employed to make the repairs testified that they were necessary, and that the sum received by him was reasonable, and the trustee produced vouchers showing payment.

6. SAME—EVIDENCE.

The uncontradicted testimony of a trustee appointed to take care of real estate that he had paid a certain sum to a certain person for repairs, and that such repairs were necessary to preserve the property, and that he believed the price charged was reasonable, is sufficient to justify an allowance of a credit for such sum, where the voucher showing payment is produced, without further proof of the details of the nature of the repairs.

7. SAME—COMPENSATION.

A trustee named in a trust deed to take care of real estate is entitled to only such compensation as is allowed to executors, in the absence of any provision in the deed regulating the compensation.

8. TRUST DEEDS—PAROL EVIDENCE.

Parol evidence that the grantor in a trust deed agreed that the trustee might have a certain commission is inadmissible, as tending to vary the terms of a written instrument.

Barrett, J., dissenting.

Appeal from judgment on report of referee.

Action by Sarah M. Disbrow against Griffin B. Disbrow and others. Judgment for plaintiff, and certain defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Jacob F. Miller, for appellants.
James R. Fancher, for respondent.

McLAUGHLIN, J. This action was brought to remove the defendants Griffin and George Disbrow as trustees, and for an accounting by them, and to have a trustee appointed in their place.

Prior to November 1, 1893, Benjamin D. Disbrow died, leaving, him surviving, this plaintiff, his widow, and four sons, the defendants, Griffin B., Charles A., Robert N., and George A. Disbrow, his only heirs at law and next of kin. He left a will in and by which he devised all of his property to his son Robert, and just prior to his death he also executed and delivered to Robert a deed conveying to him all of his real estate. The probate of the will was contested, and, after a trial had, probate was refused. Subsequently an action was brought to set aside the deed, and, while this action was pending, a compromise was effected between all of the parties interested, whereby the defendant Robert N. Disbrow and wife executed a trust deed, in and by which the defendants Griffin and George were appointed as trustees to take charge and to care for the real estate described in the deed to Robert, and to pay to the plaintiff, during her lifetime, the net income therefrom. At her death the property was to be sold, and after paying to Griffin the sum of

$7,148, and to Charles the sum of $500, sums which their father was owing them, respectively, at the time of his death, the payment of which was postponed by consent until the death of the plaintiff, the balance was to be divided equally between Griffin, George, Robert, and Charles. In pursuance of this deed, the defendants Griffin and George entered upon the execution of a trust committed to them. Thereafter, in the management of the property, ill feeling sprang up between the two trustees, and the defendant Griffin and the plaintiff, which finally culminated in the plaintiff bringing this action to remove both trustees, and to have another trustee substituted in their place. The learned justice, sitting at special term, after a trial had, reached the conclusion, as appears from his opinion, that the trust had been improperly administered because of the "feeling of hostility between the two trustees," and for that reason, if no other, they should be removed.

After a careful consideration of the record before us, we are entirely satisfied that the conclusion reached by the learned justice is right. The defendant Griffin, in the discharge of his duties as trustee, acted in not only an arbitrary and offensive manner with his co-trustee, but he failed to treat his mother, this plaintiff, with the respect due her, not only as his mother, but as one having the principal interest in the trust property. He took the entire management of the property into his own hands, and treated with contempt reasonable requests made by his co-trustee and the plaintiff in reference to what he was doing. His acts were such that it is not at all surprising that the plaintiff became suspicious of him, doubted his integrity, and finally asked for his removal. Neither is it at all surprising that bitter feeling was engendered between him and his co-trustee. The co-trustee, under the trust deed, had the same power and authority as to the property that he had, and he could not treat him in the manner disclosed in this record without subjecting himself to the liability of being removed for this cause alone.

There is no doubt but that the supreme court has the power to remove, when a sufficient cause exists, trustees from the management of trust estates, and the exercise of this power does not necessarily depend upon proof of actual mismanagement, misconduct, or dishonesty of the trustees. Whenever the court can see that inharmonious or unfriendly relations exist between the trustees, or between them and the cestui que trust, and that by reason of such inharmonious and unfriendly relations material injury may and is likely to result to the trust estate, it will exercise the power which it has, and, to prevent that injury, it will remove one, or, if the interest of the estate requires it, all, of the trustees. . This principle is very clearly stated by Mr. Justice Gray in the opinion delivered by him in May v. May, 167 U. S. 310, 17 Sup. Ct. 824, 42 L. Ed. 179. He said:

"The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed, and may properly be exercised whenever said state of ill feeling, growing out of his behavior, exists between the trustees, or between the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason

than that human infirmity would prevent the co-trustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out or are greatly exaggerated."

In Quackenboss v. Southwick, 41 N. Y. 117, Judge Grover, in speaking of a trustee who had been removed, as a person unsuitable to execute the trust, said:

"If this ground is sustained, it must be on account of the personal relations of the two acting executors and trustees, and of the relations of the appellant to those interested in the estate, and not upon the ground of any defect of capacity or integrity, as there is no charge of the latter. The case shows that there have been differences of opinion between the trustees, relative to selling certain portions of the real estate. These differences of opinion furnish no more ground for the removal of one than of the other, and I think none for the removal of either. * * * But it does appear that the relations between the appellant and his co-trustee (Quackenboss) are such that they will not, probably, co-operate in closing the trust beneficially to those interested in the estate. It is not very material to inquire how such relations originated or by whose fault, unless such inquiry should, of itself, disclose that the conduct of one had been such as to render him disqualified to act as trustee. It is sufficient to ascertain the fact to warrant the removal of one and the appointment of another in his place, to secure the faithful performance of the trust."

See, also, Scott v. Rand, 118 Mass. 215; Wilson v. Wilson, 145 Mass. 490, 14 N. E. 521; 2 Story, Eq. Jur. § 1288.

The evidence introduced upon the trial discloses that hostility to a marked degree exists between Griffin and George, and also between Griffin and this plaintiff, and it is apparent that this feeling is such as to prevent the hearty co-operation between the two trustees which should be present in order that they may properly manage property committed to them. To permit them to act as trustees would tend, in no small degree, to jeopardize the trust estate, and to defeat the object of the trust. The trial court, therefore, properly exercised the power which it had by removing both of the trustees, and appointing another in their place.

We are, however, of the opinion that the account of Griffin was erroneously surcharged with certain items:

(1) Certain sums paid for insurance the referee refused to allow, on the ground that the property was insured for more than its selling value, and that Griffin was personally liable, he having effected the insurance for the excessive premium paid, to the amount of $15.57. There is no question but that this amount was actually paid for insurance by Griffin, and, in answer to the suggestion that the property was insured for more than its selling value, it was made to appear that the amount of insurance kept upon it by Griffin was the same as that theretofore kept upon it by Robert under the deed to him from his father, and also the same as had been previously kept upon it by his father. It did not clearly appear that there had been any substantial depreciation in the meantime in the value of the property, and we think that the premiums paid should have been allowed.

(2) The referee refused to allow Griffin the amount of $87.73 penalties incurred by him in not paying taxes upon the trust within a specified time. It does not appear, at the time the taxes became due, whether the trustee had in his hands funds sufficient to

pay them or not. It however does appear that the reason why the taxes were not paid sooner than they were was because the plaintiff demanded the money in the hands of Griffin for her own personal use, and informed him that she desired it, even if the payment of the taxes was delayed. Under such circumstances, she is not in a position to complain because the taxes were not paid at an earlier date. We think this item should have been allowed.

(3) A portion of the expenses incurred in putting gas pipes and fixtures into two tenement houses was also disallowed. We think this was error. The plaintiff and the trustee George, it is true, objected to Griffin's incurring the expense of putting in the gas pipes and fixtures; but it appears from Griffin's testimony, and it is not contradicted, that it was necessary to light those buildings with gas in order to secure tenants for them. He actually paid the amount claimed in his bill for the labor and materials used in making these changes. It is true these alterations may be regarded as a permanent improvement. Nevertheless, they are for the benefit of the plaintiff, if the property could not be rented without them. The referee found that the work was necessary, and was beneficial to the cestui que trust, but he allowed only $100 upon the sum paid, on the ground that one Burne, the owner of similar houses, had put gas pipes and fixtures into his building at a cost of $50, and for that reason the referee concluded that the appellant Griffin should only be allowed $50 for each house. It is unnecessary to determine whether testimony as to what it cost Burne to put gas pipes and fixtures into his house was admissible. Even conceding that it was, it did not justify the referee in charging the trustee with the amount expended by him in excess of $100. Vouchers were produced showing an actual payment of the amount claimed. The persons performing the work were produced, and testified that the charges made were fair and reasonable, and that the labor was actually performed, and the materials actually furnished. Proof of this character cannot be overcome and disregarded by the fact that some other person had the same or similar work done and materials furnished at a less price.

(4) The referee also refused to allow various sums paid to mechanics, painters, carpenters, etc., for work performed and materials furnished, amounting in all to the sum of $1,782.16. We think this was error. The trustee actually paid out this amount. Vouchers for the expenditures were produced before the referee, and every person except one who performed the work or furnished the materials testified that the work had actually been performed or the materials furnished, and that they were necessary to keep the premises in a tenantable condition, and that the same was worth the amounts charged. It seems the referee refused to allow these items, upon the ground that the trustee had failed to prove the exact details of the work performed. The witness Atwood, who had been paid $360.34, testified that he had been employed upon the premises as a painter; that the work performed by him was necessary, because of the poor condition of the buildings and the injury done to them by the tenants; and that the price charged was fair and rea-

·sonable. Freedman, who had been paid $355.19, and Friedlander, who had been paid $358, also painters, testified, in substance, that .the work was necessary because of the poor condition of the building. Heyman, a locksmith and bell hanger, whose voucher showed· a payment to him of $100.70, testified that the work was for necessary repairs, and that the prices charged were fair and reasonable. ·Corsen, who received $485.80 for carpenter work, testified that the work which he performed was necessary, and the price charged was reasonable. Davis, who received $78.70, testified that the work performed by him was necessary, and that the price charged was reasonable. The payments made to these different persons made up .the entire amount claimed, except $23.43 paid to Dewis. Dewis was not called as a witness, but the trustee testified, and his testi-.mony upon this subject is not contradicted, that the amount paid to Dewis was for work actually performed by him, and which was nec-·essary in order to preserve the property, and that he believed the prices charged were fair and reasonable. A voucher was produced .showing payment. As to this item it should have been allowed.

(5) The referee also refused to allow the amount paid to Thomas McCall, of $1,032.08, for plumbing, except to the extent of $95.08. We think this was error. The trustee had paid to McCall the full amount claimed. He presented a voucher showing the payment, .and McCall, the person to whom the money was paid, was produced, and he swore that he had actually received that amount of money for work performed by him upon the trust property, and it was reasonably worth the amount which he had charged; that the work which he did was absolutely necessary to keep the premises in repair for the tenants; that a large amount of the work which he did was rendered necessary by reason of the exposed position of the plumbing in the buildings.

(6) As to the item of $566, the amount claimed for commissions, we think the referee properly disallowed the same. There is no provision in the trust deed regulating or describing the compensation of the trustees, and therefore they were, if entitled to anything, only ·entitled to the fees allowed by law to executors or administrators. Meachan v. Sternes, 9 Paige, 398; In re Schell, 53 N. Y. 265. The trustee attempted to prove, in order to justify this charge, an agreement between himself and the grantor, to the effect that he was to be allowed 5 per cent. commissions on the amount collected. The agreement which he sought to establish was an oral one, and the testimony was therefore properly excluded, on the ground that it tended to alter, modify, and contradict the terms of a written instrument.

The interlocutory judgment should be affirmed, and the final judgment modified, as indicated in this opinion, and, as thus modified, affirmed. All concur, except BARRETT, J., who dissents.

BARRETT, J. I cannot concur in the modification of the judgment by allowing the trustee the sum of $1,782.16, which was disallowed by the referee and the court below. This item distinctly ·covered betterments, as distinguished from repairs; and, even if ·it

could be treated as covering repairs, it was properly disallowed, under well-settled principles. There was not a particle of evidence tending to show the actual necessity of the work for which this sum was charged. It is true that the people who did the work, and got paid for it, very naturally expressed the opinion that it was necessary, and that their charges were reasonable. But that will not do. The trustee was bound to show the facts upon which these opinions were based. The burden was upon him of showing the necessity for the work, and of justifying the expenditure. Not a detail was given, not a fact or circumstance proved, to warrant his action on this head. He relied entirely upon the testimony of the very workmen and mechanics whom he employed. The real condition of the premises was not shown, nor were any facts and circumstances disclosed with regard to the relation of their condition to the occupancy and current income derivable therefrom. The item was plainly made up either of betterments or extravagant repairs. At all events, there were no facts shown from which the just distinction between betterments and really necessary repairs could be drawn. With some hesitation, I concur in the allowance of what was expended for putting in gas and for plumbing, although the items on this head are certainly large. As to the trustee's commissions, I agree that he was not entitled to compensation apart from the statute; and he certainly was not entitled to compensation under the statute. In view of his misconduct throughout, the court could not properly have allowed his statutory commissions. While, therefore, concurring unhesitatingly in the affirmance of the interlocutory judgment removing this trustee, and also in the treatment of several of the items allowed and disallowed by the learned referee, I am compelled to dissent from the modification of the final judgment in the single particular discussed.