ISABELLE PALMER, Appellee, v. ROSINA WOLF, Appellant.

**APPEAL AND ERROR:** Dismissal—Appointment of Guardian—Death of Ward. An appeal from an order appointing a guardian may be dismissed on motion of appellee, when it is made to appear that, since the appeal was taken, the ward has died, and her estate has been fully settled. In the case at bar, the dismissal is without prejudice, in order that no adjudication of the mental unsoundness of the deceased might appear.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

SATURDAY, DECEMBER 16, 1916.

THIS was an application by plaintiff for the appointment of a guardian of the property of defendant. There was a trial to a jury, and a finding by it that defendant was incompetent to care for her business, and a guardian was appointed. From such appointment, the defendant appealed. Since the appeal, the ward has died, and the plaintiff has filed a motion to dismiss the appeal, on the ground that, under the circumstances shown, there is now only a moot question for determination. The motion to dismiss is sustained, but without prejudice.—*Motion Sustained.*

*L. M. Kratz,* for appellant.

*Crosby & Fordyce,* for appellee.

PRESTON, J.—1. The motion to dismiss was submitted with the case. Plaintiff is a daughter of the defendant's. There are other children. Appellant earnestly challenges the sufficiency of the evidence to sustain the finding

APPEAL AND ER-
ROR: dismissal:
appointment of
guardian: death
of ward.

of the jury that the defendant was incompetent. Ordinarily, this would be a question for the jury. For the reason to be stated later in the opinion, we may not determine this question. We may say, however, that we have examined the record. The evidence introduced by plaintiff is not at all strong or conclusive. The defendant was 94 years of age at the time of the trial. Her deceased husband had always looked after his business. Defendant had not come into her share of her husband's estate. It is undoubtedly true, from her evidence and that of other witnesses, that she was not accustomed to transact business, and her evidence shows that she was not acquainted with the details of her own affairs. Her testimony, however, in the main is remarkably clear, for a woman of her age. It occurs to us that the fact that the defendant was not accustomed to transacting business, and a series of questions propounded to defendant as a witness, were quite persuasive in the minds of the jury that a guardian ought to be appointed. We shall set out a few questions and the answers of defendant:

"Q. Now do you feel if some good, honest, straightforward man to look after the property and investments for you, and give you the proceeds of it—would that be all right? Some good, honest,—any good man? A. Well, I don't know yet. I won't do anything. I say Andy can look after it for me. Q. Mrs. Wolf, do you not feel now that you ought to have some good, honest man to look after your property and help you keep it intact, together, so it would not be wasted and lost? A. Yes, but I wouldn't be willing

to do that yet. I don't feel able to manage it myself. Mr. Wolf always managed things himself. Q. Suppose Judge Ellison should pick some good man in Cedar Rapids, a nice man, some man you know of, a good business man, who could give bonds for more than the property is worth,—some man like that, so you would be safe and secure,—would you be satisfied to let such a man look after your affairs? A. I would think it over. I can think it over. Q. Suppose a man that Judge Ellison would select would put up a bond for double the amount of the property likely to come into his hands for you, to protect you and secure you against any loss, Mrs. Wolf, wouldn't you be satisfied to have such a man? A. I don't know; I can think it over, you know.''

She finally answered that she would be willing that some good man be appointed, and that she would feel satisfied to allow Judge Ellison, the man who sits on the bench, to select a man for her.

Though it be conceded that defendant was not competent to personally look after her affairs, still, if she was mentally competent to appoint an agent, she could do that, and the agent could look after her property and help her keep it intact, so it would not be wasted and lost. But, as stated, we may not determine the merits of the case.

2. It is contended by appellee that the appeal should be dismissed, because the death of the ward has terminated the guardianship and the appeal must be ineffectual, citing *Faucher v. Grass*, 60 Iowa 505; *Bethany Congregational Church v. Morse*, 151 Iowa 521; *Horrabin v. City of Iowa City*, 160 Iowa 650; 4 C. J., page 578, Sec. 2386, and page 584, Sec. 2396.

It appears that defendant made a will after a guardian was appointed, and there was a contest filed. Appellant contends that, because of this, a reversal and a holding that a guardian should not have been appointed would have a bearing upon the burden of proof as to the competency of

defendant, now deceased, to make a will, and that, in any event, though defendant is now deceased, the records ought not to show that she was of unsound mind if she was not so. But it is made to appear, from a written stipulation signed by all parties interested, and by concessions in argument in open court, that the property would be distributed under the will in the same manner as it would be under the law, except that the will provides that one of the sons shall be paid compensation for his services; and it was stipulated in writing that all matters growing out of the will contest were settled, and all matters of controversy between the parties settled. The written stipulation provides, as we understand it, that appellee might show in this court that defendant had died since the trial of the guardianship proceedings and since the appeal was perfected, so that all property rights have been adjusted. If the case should be reversed here, the guardianship hearing could not be retried. In a sense, under the circumstances shown, the death of defendant does work an abatement of the proceeding. For this reason, we think the motion to dismiss must be sustained, but that it should be without prejudice, so that there is no adjudication as to the mental unsoundness of the deceased.

In 4 C. J. 589, under the title "Appeal and Error," we find this doctrine:

"Plea in Abatement or in Bar. In some jurisdictions, objections based on defects in perfecting the appeal, unless apparent on the face of the record, should be taken by plea in abatement, filed in apt time by the clerk of the court; and the same is true as to objections based on matters happening since the perfection of the appeal or subsequent to the judgment sought to be reviewed in a proceeding in error. In these jurisdictions, a motion to dismiss the appeal for the causes set up in such plea will not be entertained. In other jurisdictions, when matters occur subsequently to the judgment, which operate to waive the right of a party to have the

judgment reviewed, and they appear of record, objection is properly raised by a motion to dismiss," etc.

And in the same work and volume, page 588, Sec. 2400, we find this:

"Dismissal without Prejudice. There seems to be no general rule as to when the court may and may not dismiss an appeal without prejudice to the rights of appellant. It has been held that, in the absence of special equitable considerations, appellant is not entitled to a dismissal without prejudice. If such special considerations exist, however, the appeal may be so dismissed."

See, also, as bearing upon this proposition: *Tuttle v. Tuttle* (N. D.), 124 N. W. 429; *Garlington v. Davison,* 122 Ga. 677 (50 S. E. 667); *Riggins v. Richards,* 97 Tex. 526 (80 S. W. 524).

In the Georgia case just cited, it was held that an appeal will be dismissed without prejudice where appellant could not benefit by a reversal.

It is our conclusion, then, that, because of the death of defendant, the action ought to abate, and this without prejudice, and the motion to dismiss must be sustained, and it is sustained without prejudice.

EVANS, C. J., DEEMER and WEAVER, JJ., concur.