59 So.2d 898

**INGALLS et al. v. INGALLS.**

**6 Div. 194.**

Supreme Court of Alabama.

June 26, 1952.

Chas. W. Greer and Francis H. Hare, Birmingham, for appellee.

Lange, Simpson, Robinson & Somerville, Reid B. Barnes and Jas. A. Simpson, all of Birmingham, for appellants Robt. I. Ingalls, Sr., and Ellen Gregg Ingalls.

Cabaniss & Johnston, Birmingham, for appellant First Nat. Bank of Birmingham.

Waites & Tucker, Birmingham, for appellant Pixton.

524

LAWSON, Justice.

The important question in this case is whether appellants have been rightly removed from the office of trustee under several of the so-called Ingalls Trusts.

The trusts from which appellants insist they have been incorrectly removed have been designated for convenience as Trusts C, D, E, F, and G.

The original bill was filed in the circuit court of Jefferson County, in equity, on June 17, 1949. It was amended several times, the last amendment coming after the testimony was all in.

The complainants in the bill as amended are: (1) Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls, minors, who sue by their guardian, Robert I. Ingalls, Jr.; (2) Robert I. Ingalls, Jr., as trustee for the use and benefit of Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls. The respondents are Robert I. Ingalls, Sr., Mrs. Ellen Gregg Ingalls, The First National Bank of Birmingham, and M. F. Pixton.

Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls are the daughters of Robert I. Ingalls, Jr., by his first wife, from whom he was divorced in June, 1947. Robert I. Ingalls, Jr., married for the second time on September 30, 1948.

The respondents Robert I. Ingalls, Sr., and Ellen Gregg Ingalls, husband and wife, are the parents of Robert I. Ingalls, Jr., and the grandparents of Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls. The

First National Bank of Birmingham is a corporation organized and existing under the laws of the United States of America. M. F. Pixton has been for a number of years connected with the Ingalls business interests and has served for many years as the agent of the trustees of the several Ingalls Trusts.

For present purposes it may be said that Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls are the sole beneficiaries of all the trusts directly involved here.

Robert I. Ingalls, Jr., to whom we may sometimes refer as the complainant, was a cotrustee of all the trusts except Trust D, of which he was the settlor. The cotrustees of Trust D were Robert I. Ingalls, Sr., and The First National Bank of Birmingham.

The cotrustees of Robert I. Ingalls, Jr., in the other trusts were as follows: Trust C, his father, Robert I. Ingalls, Sr.; Trust E, his mother, Ellen Gregg Ingalls, and the First National Bank of Birmingham; Trust F, his mother, Ellen Gregg Ingalls, and M. F. Pixton; Trust G, his father, Robert I. Ingalls, Sr., and M. F. Pixton.

Trusts C and D were each created in December, 1938, the respondent Ellen Gregg Ingalls being the settlor of Trust C and, as we have shown above, complainant Robert I. Ingalls, Jr., was the settlor of Trust D. The original corpus of each of these trusts consisted of 500 shares of the capital stock of Ingalls Iron Works Company.

Trust E was created in December, 1941, by the respondent Robert I. Ingalls, Sr. The original corpus was 1,000 shares of the capital stock of Ingalls Iron Works Company.

Trusts F and G were each created in March, 1943. Robert I. Ingalls, Sr., was the settlor of Trust F and Ellen Gregg Ingalls was the settlor of Trust G. The original corpus of Trust F was 2,000 shares of the capital stock of Ingalls Iron Works Company and the original corpus of Trust G was 500 shares of the capital stock of that company.

There are two more of the so-called Ingalls Trusts, A and B, of which we think

we should make certain observations, although they are not directly involved on this appeal.

Trust A was created in 1932 by the respondent Robert I. Ingalls, Sr., with an original corpus consisting of 1,800 shares of capital stock of Security Realty & Investment Company. In December, 1938, Mr. Ingalls, Sr., donated 1,000 shares of the stock of Ingalls Iron Works Company to this trust. The beneficiaries of this trust are named as Mrs. H. B. Ingalls, Mrs. Ellen Gregg Ingalls, and Robert I. Ingalls, Jr., the mother, wife, and son, respectively, of the settlor. Following their deaths, the trust estate is to be held for the benefit of the lineal descendants of Robert I. Ingalls, Jr. The trustees are Robert I. Ingalls, Jr., Mrs. Ellen Gregg Ingalls, and the First National Bank of Birmingham.

On the same day the bill in the case here under review was filed, Robert I. Ingalls, Jr., filed another suit in the circuit court of Jefferson County, in equity, against the First National Bank of Birmingham and his mother, Mrs. Ellen Gregg Ingalls, seeking their removal as trustees of Trust A. The two suits, involving the same parties, seeking identical relief on substantially the same grounds, were consolidated for trial. See §§ 221 and 259, Title 7, Code 1940.

Trust B was created in December, 1938, by the respondent Robert I. Ingalls, Sr. The original corpus consisted of 500 shares of the capital stock of Ingalls Iron Works Company. It appears that 750 shares of the capital stock of that company have been added to the corpus of the trust, making a total of 1,250 shares. The beneficiaries are named as Elesabeth Ingalls and any other such grandchild or descendant of the donor who may thereafter be born. The trustees serving at the time this proceeding was instituted were the complainant, Robert I. Ingalls, Jr., and the First National Bank of Birmingham. As originally filed, the bill in this case involved Trust B, but subsequent to filing of the bill the First National Bank of Birmingham was removed as trustee of Trust B by action of Robert I. Ingalls, Jr., by virtue of provisions in the indenture of trust giving him the right, without cause, to effect such removal. No question as to this action is involved on this appeal.

The trusts directly involved here hold 4,500 shares of the capital stock of Ingalls Iron Works Company. Trust A holds 1,000 shares and Trust B 1,250 shares. Thus it appears that the so-called Ingalls Trusts hold 6,750 of the 15,000 shares of the capital stock of Ingalls Iron Works Company. The other shares of capital stock of that company at the time this suit was filed and trial had were held as follows: Robert I. Ingalls, Sr., 2,287 shares; Ellen Gregg Ingalls, 1,407 shares; Robert I. Ingalls, Jr., 4,501 shares; and Elesabeth Ridgely Ingalls, 55 shares.

The Ingalls Iron Works Company was organized about the year 1909 by Robert I. Ingalls, Sr. From the time of the organization of the company until the time of the trial below Robert I. Ingalls, Sr., served as its managing head and chief executive officer and under his leadership it has grown and prospered. For approximately ten years prior to the time this litigation was instituted, the company paid dividends of $5 a share on its 15,000 outstanding shares of capital stock, and since its organization it has accumulated assets worth millions of dollars. For a number of years Robert I. Ingalls, Sr., has served as chairman of the board of directors of Ingalls Iron Works Company and its subsidiary, Ingalls Shipbuilding Corporation.

For several years prior to May 10, 1948, Robert I. Ingalls, Jr., served as president of Ingalls Iron Works Company and as vice-chairman of the board of directors of Ingalls Shipbuilding Corporation. He had been a member of the board of directors of Ingalls Iron Works Company for a good many years and was also a member of the board of directors of other companies which appear either to have been subsidiaries of Ingalls Iron Works Company or companies in which Ingalls Iron Works Company owned stock. He received the sum of $45,000 a year. But Robert I. Ingalls, Sr., as chairman of the board of directors of Ingalls Iron Works Company and chief executive officer of that company and its subsidiaries, seems to have been the

dominant figure in the business affairs of the company and its subsidiaries.

In the early part of 1948 a serious personal difficulty arose between Robert I. Ingalls, Sr., and Robert I. Ingalls, Jr., and on May 10, 1948, the elder Ingalls discharged his son from the office of president of Ingalls Iron Works Company and ordered him to leave the company's premises. The younger Ingalls left and has received no salary from the company since. On November 9, 1948, a special meeting of the board of directors of Ingalls Iron Works Company was held and the action of the elder Ingalls in removing his son as president of the company was ratified, the removal being made retroactive to May 15, 1948. On February 25, 1949, the membership of the board of directors of Ingalls Iron Works Company was reduced from five to three and Robert I. Ingalls, Jr., was not reelected to the board of directors.

Subsequent to May 10, 1948, the day on which the younger Ingalls was discharged, and prior to June 17, 1949, the date on which this suit was filed, numerous other suits were instituted, most of which were filed by the younger Ingalls. The relationship between father and son was far from cordial.

We have indicated heretofore that the purpose of the bill in this cause is to have the respondents removed as trustees of the several trusts involved. Unquestionably, the bill as amended sought to have Robert I. Ingalls, Sr., removed as trustee of Trusts C, D and G, although the amended prayer does not seem to specifically pray his removal as trustee of Trust C. However, no point is made of this omission and it is clear from the averments of the bill that such relief was sought, all the parties and the trial court seeming to have so construed the bill, and under the general prayer, in view of the averments of the bill, such relief could be granted upon proper proof. The bill specifically prays that Mrs. Ellen Gregg Ingalls be removed as trustee of Trusts E and F and that the First National Bank of Birmingham be removed as trustee of Trusts D and E, and that M. F. Pixton be removed as trustee of Trusts F and G.

The actions of respondents which the bill alleges constitute grounds for their removal as trustees of the several trusts are summarized:

1. *Withholding of trust funds.* This charge is directed against all the respondents.

2. *Wrongful investment and use of trust funds.* This charge is directed against all the respondents except the First National Bank of Birmingham.

3. *Hostility toward Robert I. Ingalls, Jr., a cotrustee of all the trusts except Trust D.* As we understand the averments of the bill, active hostility is charged only as to Robert I. Ingalls, Sr. But the total effect of all the averments of the bill, as we construe it, is to charge that this hostility reflects itself in the action of the other respondents because of their domination and control by Robert I. Ingalls, Sr., in all matters relating to the administration of all the trusts.

4. *Violation of express provisions of Trust A in so far as it requires unanimous consent of all trustees in the administration of the trust.* This charge is directed against the First National Bank of Birmingham and Mrs. Ellen Gregg Ingalls, but Robert I. Ingalls, Sr., is involved in that it is averred in effect that the alleged illegal action of the Bank and Mrs. Ingalls resulted from their subservience to the wishes of Robert I. Ingalls, Sr.

As noted, this suit was consolidated for trial with the suit seeking removal of the trustees of Trust A other than Robert I. Ingalls, Jr. On the trial the testimony was taken *ore tenus.* Both cases were submitted for final decree in July, 1950, and separate decrees were rendered on November 13, 1950. The decrees rendered are not only directed to the end that all the respondents in both cases be removed as trustees of all the trusts, but affect Robert I. Ingalls, Jr., in the same manner, although there had been no pleading seeking his removal, he being included in the decree of removal on the theory that he had submitted himself to the jurisdiction of the court and the evidence showed the need of new trustees who can and will administer the

trusts promptly, impartially, capably and fairly without hindrance from self-interest. Both decrees provided that the trustees "be and they are hereby separately and severally removed effective thirty (30) days from the date hereof or as soon thereafter as their successors are appointed by the court and qualified."

Robert I. Ingalls, Jr., has not appealed or made cross assignments of error.

All the respondents in each case have appealed to this court. The cases were submitted here separately on separate transcripts. The case involving Trust A is ante, p. 518, 59 So.2d 912. The case with which this opinion deals is 6 Div. 194.

The respondents M. F. Pixton and the First National Bank of Birmingham have made separate assignments of error. The other two respondents, Robert I. Ingalls, Sr., and Mrs. Ellen Gregg Ingalls, have listed assignments of error following this statement: "Come the appellants, Robert I. Ingalls, Sr., and Ellen Gregg Ingalls, separately and severally, in the several capacities in which they are sued, and show the court that on the trial of this cause below grievous and manifest error has intervened to their separate prejudice in this cause." Perhaps out of an abundance of precaution, upon submission here an order of severance was sought and obtained. See Maya Corp. v. Smith, 240 Ala. 371, 199 So. 549.

■ It has long been recognized that courts of equity having supervision over administration of trusts have the power to remove a trustee for proper cause. This power is not dependent upon statute and it has been held generally that what constitutes a sufficient ground for removal is within the sound judicial discretion of the court.

■ In this state we have a statute which provides that upon the petition or bill of any person interested in the execution of a trust, a court of equity may remove a trustee who has violated or threatened to violate the trust, or who is insolvent or whose insolvency there is good reason to apprehend, or who has removed from the state, or who for any other cause is an unsuitable person to execute the trust, or who has any pecuniary interest which may be adverse to the interest of the trust. Title 58, § 65, Code 1940. While this statute enumerates some specific grounds for removal, it also contains the omnibus provision, "or who, for any other cause, is an unsuitable person to execute the trust". So our statute is not a limitation upon the power of a court of equity in the matter of removal of trustees, but is in effect a declaration of the law as it existed. Ex parte Jonas, 186 Ala. 567, 64 So. 960.

■ It has been said that a court should be more reluctant to remove a trustee appointed by the settlor than one selected by itself. In re Bailey's Estate, 306 Pa. 334, 159 A. 549; Shelton v. McHaney, 343 Mo. 119, 119 S.W.2d 951; Willson v. Kable, 177 Va. 668, 15 S.E.2d 56. See Scott on Trusts, § 107.1.

■ The removal of a trustee is a drastic action which should only be taken when the estate is actually endangered and intervention is necessary to save trust property. In re Crawford's Estate, 340 Pa. 187, 16 A.2d 521; In re Hodgson's Estate, 342 Pa. 250, 20 A.2d 294; Chambers v. Mauldin, 4 Ala. 477; Satterfield v. John, 53 Ala. 127. This is especially true where the trustee is named by the settlor. In re Crawford's Estate, supra; Taylor v. Errion, 137 N.J. Eq. 221, 44 A.2d 346, affirmed 140 N.J.Eq. 495, 55 A.2d 11.

■ While the removal of a trustee is a matter resting largely within the sound judicial discretion of the trial court, it is equally clear that an abuse of that discretion renders its exercise subject to review. Ex parte Jonas, supra; In re Crawford's Estate, supra. See Scott on Trusts, § 107.

■ In so far as the decree of the trial court is sought to be reversed on the ground that the evidence is insufficient to support the decree removing appellants as trustees of the several trusts, our review here is governed by the following principles: First, since the exercise of the function of removing trustees by a court of equity belongs to what is called that court's sound judicial discretion, its action in removing appellants will not be reversed unless we

are convinced that such discretion has been abused. Ex parte Jonas, supra. Second, where, as here the evidence was taken *ore tenus*, or partly so, the trial court's conclusion on the facts will not be disturbed unless palpably wrong. Aiken v. Barnes, 247 Ala. 657, 25 So.2d 849, and cases cited.

We know that shortly after this case was submitted to this court the appellant Robert I. Ingalls, Sr., died. This fact was brought to our attention by motion to remand the cause to the trial court for further consideration in the light of his death. This motion was denied. As to the appellant Robert I. Ingalls, Sr., the record presents mere abstract or moot questions, the determination of which will be of no practical benefit. We see no occasion to consider the assignments of error made on his behalf. Kellett v. Marvel, 9 Cal.App.2d 629, 51 P.2d 185; Hartleroad v. Seward, 101 Ind.App. 254, 199 N.E. 168; Palmer v. Wolf, 178 Iowa 932, 160 N.W. 285; Mays v. White, 85 Fla. 150, 95 So. 299; 4 C.J.S., Appeal & Error, § 407, p. 870. See Gaines v. Malone, 242 Ala. 595, 7 So.2d 263.

The death of Robert I. Ingalls, Sr., subsequent to submission here does not affect our review of the action of the trial court removing the other appellants. We must consider the situation as it existed at the time the decree of the lower court was rendered, including the relationship of Robert I. Ingalls, Sr., to the other appellants. We observe also that the removal of Robert I. Ingalls, Jr., as trustee, when he has not appealed, does not bear on the questions presented.

Attention is called to the fact that while this proceeding was instituted on June 17, 1949, the evidence as to the manner in which the trustees conducted the affairs of the trusts was not limited to their conduct prior to that date. It was the theory of the trial court and of all parties to the cause that all acts of the trustees bearing on the manner of their administration of the trusts up to the time of the hearing should be considered, and the case was tried on this theory. We have already noted that after the evidence was in, the bill was amended so as to meet the evidence.

The First National Bank of Birmingham sometimes hereinafter will be referred to as the Bank.

The Bank, Mrs. Ellen Gregg Ingalls, and M. F. Pixton all insist that the decree of the trial court should be reversed because the evidence was wholly insufficient to justify the action of the trial court in removing them as trustees.

Why were these three trustees removed? We must confess we have encountered some difficulty in answering that question with certainty. Their names are not mentioned in the decree, the only respondent to whom specific reference is made being Robert I. Ingalls, Sr.

We have examined the decree of the trial court very carefully to determine the exact grounds upon which was based its action in removing the Bank, Mrs. Ellen Gregg Ingalls, and M. F. Pixton.

As we understand the decree, the trial court found as follows: (1) Robert I. Ingalls, Sr., was determined to financially injure his son, Robert I. Ingalls, Jr. (2) The primary motive behind the struggle between father and son was the desire on the part of the elder Ingalls to retain control over Ingalls Iron Works Company and the desire of the younger Ingalls to regain his position with that company and to gain power over it. (3) In this struggle for power the father and son each seek to use the stock of the company held by the several trusts to accomplish their own objectives, to the detriment of the trust estates.

These findings, of course, in and of themselves show no cause for removal of the Bank, Mrs. Ellen Gregg Ingalls and M. F. Pixton. But if we interpret the decree correctly, the trial court found they were dominated by Robert I. Ingalls, Sr., and as the result of such domination refused to make distribution from the several trusts for the benefit of the minor beneficiaries and voted the trust-held stock of Ingalls Iron Works Company to retain Mr. Ingalls, Sr., in a position of power in that company, against the wishes of Mr. Ingalls, Jr., to regain his position with the company, all to

the detriment of the trust estates, thus joining the elder Ingalls in his desire to financially injure his son.

The evidence is without dispute that no distribution was made from any of the trusts here involved for the support, education, expenses of travel, and comfort of the minor beneficiaries after the personal difficulty between their father and grandfather; and it is also undisputed that there were large sums of money in each of these trusts available for distribution.

What does the evidence show as to the elder Ingalls' domination of the Bank, Mrs. Ellen Gregg Ingalls and M. F. Pixton causing failure of distribution?

Mr. Ingalls, Sr., owned a comparatively few shares of stock of the Bank and was a member of its board of directors, although he attended meetings infrequently. He and the Ingalls Iron Works Company and its subsidiaries were large depositors of the Bank. He is the husband of Mrs. Ellen Gregg Ingalls. As chief executive officer of Ingalls Iron Works Company, he had been instrumental in bringing M. F. Pixton into the employ of that company. They had worked together closely and Pixton had great respect for Mr. Ingalls, Sr., as a business executive. Pixton usually received an annual bonus, as did some other employees of the company. It was Mr. Ingalls, Sr., who had the authority to determine whether a bonus would be paid and perhaps the amount thereof. These relationships, standing alone, are not in our opinion sufficient to support a finding that the Bank, Mrs. Ellen Gregg Ingalls and M. F. Pixton were dominated in their actions as trustees by Mr. Ingalls, Sr.

The evidence does not show or support an inference to the effect that Mr. Ingalls, Sr., a trustee of Trusts C, D and G, and the settlor of Trusts B, E and F, ever requested the withholding of distributions to the minor beneficiaries under any and all circumstances. It does appear that after the break between him and his son, Mr. Ingalls, Sr., did state it was his opinion that Robert I. Ingalls, Jr., had sufficient assets and income to care for his children and expressed the hope that the trustees of the several trusts of which his grandchildren were beneficiaries would make no distribution of the trust income unless a real need therefor should arise. He expressed the further hope that the trustees would not permit his son to "raid" the trusts.

As to Trusts C, D and E, this request of Mr. Ingalls, Sr., was nothing more than that the trustees comply with the express language of those trusts giving to the trustees discretion as to distribution of income to the minor beneficiaries. At the time this request was made, it appears that all the trustees, including Mr. Ingalls, Jr., considered the trustees of all the trusts, including Trusts F and G, were vested with such discretion.

We will not attempt to set out here all the evidence as it relates to the failure of distribution. However, the entire record, consisting of almost 2,000 pages, has received very careful consideration and all the evidence has been discussed in considerable detail in consultation.

The following summary of the evidence relating to failure of distribution will, in our opinion, be sufficient.

Prior to the difficulty between Mr. Ingalls, Sr., and Mr. Ingalls, Jr., all the trusts had been handled without controversy of any kind and in a manner uniformly satisfactory to all the trustees, including Mr. Ingalls, Jr. Total payments from all the trusts for the support, education, expenses of travel, and comfort of the minor beneficiaries from December, 1938, when Trusts B, C, and D were created, until May, 1948, amounted to a little over $14,000. Payments were made from time to time, whenever Mr. Ingalls Jr., the father of the young ladies, requested such payment, as a matter of course and without any formality.

The small amount paid out of those trusts prior to May, 1948, was no doubt due at least in part to the fact that during that time Mr. Ingalls, Jr., in addition to his other income, was drawing a salary of $45,000.

After May 15, 1948, Mr. Ingalls, Jr., drew no salary but he had an income amounting to approximately $37,000 a year, exclusive of taxes, $22,505 of this amount being re-

ceived as annual dividends from his stock in Ingalls Iron Works Company. The Bank, Mrs. Ellen Gregg Ingalls and M. F. Pixton were all cognizant of the fact that Mr. Ingalls, Jr., had a substantial income aside from his salary.

Mr. Ingalls, Jr., was named guardian of his minor daughters on May 30, 1948. He made no request for distribution from any of the trusts from the time of his discharge from Ingalls Iron Works Company until his remarriage on September 30, 1948. Upon his second marriage, his family consisted of himself, his two daughters, his second wife and her two children by a former marriage. There is some evidence tending to show that in the late part of 1948 or early part of 1949 Mr. Ingalls, Jr., did make one or more oral requests of the Bank and of Mr. Pixton for distribution. No such request was made of the other trustees, Robert I. Ingalls, Sr., and Mrs. Ellen Gregg Ingalls. No specific amount was requested and no data furnished upon which the Bank, as trustee of Trusts D and E, could act in exercising the discretion specifically vested in the trustees by the trust indentures. As before noted, all the parties at the time seemed to be of the opinion that similar discretion was vested in the trustees of Trusts F and G.

On March 15, 1949, a trust officer of the Bank, who was also one of the Bank's vice presidents, wrote a letter to Mr. Ingalls, Jr., wherein he advised there was cash in Trusts A, B, D and E to be invested and asked Mr. Ingalls, Jr., a trustee of all those trusts except D, for his views thereon, Mr. Ingalls, Jr., replied on March 31, 1949, stating that "consideration should be first given to a disbursement of whatever is necessary out of the cash on hand as benefits to the beneficiaries as is contemplated by the trusts, and as has been done in the past until recently." Considerable correspondence followed in which the Bank pointed out that all the trusts of which it was a trustee, except Trust A, vested the trustees with discretion as to payments to beneficiaries and called on Mr. Ingalls, Jr., to furnish a statement of the needs of the beneficiaries, the income of Mr. Ingalls, Jr., and other sources of income of the minor beneficiaries. Counsel for Mr. Ingalls, Jr., advised that such data would be forthcoming. On May 26, 1949, the Bank not having received such information, its counsel again asked an attorney for Mr. Ingalls, Jr., to see that such information was furnished the Bank.

Before any such information was obtained, this suit was filed June 17, 1949. Nothing further seems to have been done by any of the interested parties toward distribution until the early part of December, 1949, when counsel for Mr. Ingalls, Jr., wrote the Bank requesting distribution. Mr. Ingalls, Jr., wrote a similar letter and either his letter was accompanied with a statement, prepared by a certified public accountant employed by him, purporting to show the amount of money he had expended during the thirteen-month period for the support, etc. of his minor daughters and containing information relative to his income, or such a statement was furnished to the Bank a few days later.

After receipt of this statement, a trustees' meeting, attended by counsel but not by the accountant, was held at the Bank on December 23, 1949. At this meeting distribution to Mr. Ingalls, Jr., for the use and benefit of the minor beneficiaries of the several trusts was discussed, both as to past expenditures and future needs, and the statement furnished by Mr. Ingalls, Jr., was analyzed. Among other things it showed that Mr. Ingalls, Jr., claimed reimbursement amounting to approximately $31,000 covering the thirteen-month period, or about $80 a day for the support, etc. of his two daughters. Counsel for Mr. Ingalls, Jr., took the position that in none of the trusts were the trustees authorized to take into consideration the income of Mr. Ingalls, Jr., in arriving at the sum to be distributed for the benefit of the minor beneficiaries. On the other hand, the other trustees seemed to have been of the opinion that the trustees of all the trusts were invested with discretion and in exercising that discretion they should take into consideration the ability of Mr. Ingalls, Jr., to support his own children. This meeting was adjourned without any definite action being taken on the question of distri-

bution and with the understanding that another meeting would be held, with the accountant in attendance. Such meeting was held on January 12, 1950, and as we understand the record, the accountant indicated that his statement showing expenditures and income was not accurate. In any event, no agreement was reached in regard to distribution.

As a result of these conferences and a study by the Bank of the claim for reimbursement, the Bank reached its conclusion and in January, 1950, advised Mr. Ingalls, Jr., that it was of the opinion that approximately $17,000 should be reimbursed to him on account of payments made by him on behalf of his minor children, and that it was of the further opinion that all future direct expenses of the minor children should be paid pro rata from the several trusts, including trusts of which the Bank was not a trustee. The amount proposed by the Bank for reimbursement was not acceptable to Mr. Ingalls, Jr., and he was not in accord with its suggestion that only direct expenses of the children be paid in the future from trust income. In view of the reaction of Mr. Ingalls, Jr., to its proposal, the Bank did not seek to obtain subsequent concurrence of its cotrustees.

During the month of January, 1950, Mr. Ingalls, Sr., was joined by Mrs. Ellen Gregg Ingalls in submitting a proposal for making distribution to the minor beneficiaries under certain conditions which, whether properly made or not, unquestionably sought to protect the trust estates. This proposal was unacceptable to Mr. Ingalls, Jr. During this period of time the record indicates that M. F. Pixton was also of the opinion that distribution should be made to the minor beneficiaries in accordance with their need, but Mr. Ingalls, Jr., was not in accord with the position taken by Mr. Pixton. In December, 1949, or January, 1950, as we understand the record, Mr. Ingalls, Jr., and his counsel for the first time took the position that no discretion was vested in the trustees of Trusts F and G as to distribution to the minor beneficiaries, contending that under those trusts distribution was mandatory.

When it appeared that the trustees of all the trusts, including Mr. Ingalls, Jr., could not agree on a proper procedure and on the construction to be placed on the several trust instruments, it was agreed by all the trustees that a suit be filed seeking instructions and construction of the trust instruments. Such suit was filed on February 15, 1950, and final decree therein was rendered on May 31, 1950, holding in substance that as to Trusts F and G no discretion was vested in the trustees as to distribution to the minor beneficiaries, but that the trustees of Trusts B, C, D and E were charged with the exercise of discretion as to disbursements and in the exercise of their discretion they should take into consideration the income of the father, as well as such payments as were made from Trusts F and G. We affirmed. Ingalls v. Ingalls, 256 Ala. 321, 54 So.2d 296.

It seems to us that the Bank, as trustee of Trusts D and E, and Mrs. Ellen Gregg Ingalls, as trustee of Trust E, cannot be criticized for not making distribution from these trusts, in view of the discretion vested in them and the failure of Mr. Ingalls, Jr., as the parent and guardian of the minor children, to furnish them with satisfactory information upon which they could act. As to Trusts F and G, of which Mrs. Ellen Gregg Ingalls and M. F. Pixton are trustees, it is true that the trial court and this court both have construed as mandatory the provisions of the trust indentures dealing with distribution. However, as we have heretofore indicated, we think this record clearly shows that all parties at one time were of the opinion that discretion was vested in the trustees of Trusts F and G, and certainly there is nothing to indicate that Mrs. Ellen Gregg Ingalls and M. F. Pixton were not acting in good faith. In fact, the evidence shows their action was based upon advice of counsel. Trusts F and G both contain language which could warrant an assertion in good faith that the settlors intended for the trustees to exercise discretion relative to distribution.

The action of the trustees in connection with failure of distribution must be considered in the light of the fact that prior distribution from these trusts had been

extremely small and the further fact that the trusts were created for the benefit of the minor beneficiaries and not for the benefit of Mr. Ingalls, Jr., and were not to be used as a means of supporting Mr. Ingalls, Jr., or any other person. Certainly the size of the claim presented by Mr. Ingalls, Jr., for past expenditures was sufficient to concern the trustees who, we believe, honestly entertained the view that distribution from the several trusts should be made only in accordance with the actual needs of the minor beneficiaries.

■ Under the circumstances outlined above, we believe the action of the Bank, Mrs. Ellen Gregg Ingalls, and M. F. Pixton in failing to make distribution from the several trusts to the minor beneficiaries for their support, etc. was in accordance with what they considered to be their duty and not because they were under the domination and control of Mr. Ingalls, Sr., and joined with him, as the trial court found, in an effort to financially injure Mr. Ingalls, Jr., to the detriment of the trust estates.

In our opinion the record does not show any disposition on the part of the Bank, Mrs. Ellen Gregg Ingalls, or M. F. Pixton to arbitrarily withhold distributable income from the beneficiaries or any conduct constituting bad faith. Rossi v. Davis, 345 Mo. 362, 133 S.W.2d 363, 125 A.L.R. 1111.

■ We are not inclined to disagree with the finding of the trial court to the effect that Mr. Ingalls, Sr., was determined to financially injure his son, Robert I. Ingalls, Jr.; that the primary motive behind the struggle between father and son was the desire on the part of the elder Ingalls to retain control over Ingalls Iron Works Company and the desire of the younger Ingalls to regain his position with that company; that in the struggle they each seek to use the stock of the company to accomplish their objectives. But this fight between father and son, in and of itself, could not justify removal of the Bank, Mrs. Ellen Gregg Ingalls, and M. F. Pixton. We cannot see how the removal of the trustees, named by the settlors of the trusts, could bring to an end the struggle between father and son. The removal of the trustees

might change the battle line, but would not remove the trusts from the conflict.

This struggle between father and son necessarily involves the several trusts, for together they hold 6,750 of the 15,000 shares of stock of the Ingalls Iron Works Company. Mr. Ingalls, Jr., owned 4,501 shares and his daughter Elesabeth owned 55 shares, a total of 4,556. Mr. Ingalls, Sr., owned 2,287 shares and his wife 1,407 shares, a total of 3,694.

In the conflict between father and son the Bank, as a trustee of Trusts A, D and E, saw fit to vote the stock held by those trusts to the end that Mr. Ingalls, Sr., as well as the management he had provided, be retained and that Mr. Ingalls, Jr., not be reelected to the board of directors. Mrs. Ellen Gregg Ingalls, as a trustee of Trusts A, E and G did likewise, as did M. F. Pixton, as trustee of Trusts F and G. This course of action was contrary to the wishes of Mr. Ingalls, Jr., who was a trustee of all those trusts except Trust D. The stock held by Trust B was not voted while the Bank was trustee, inasmuch as there were only two trustees and the Bank and Mr. Ingalls, Jr., were not in accord. The same is true of the stock held by Trust C, of which Mr. Ingalls, Sr., and Mr. Ingalls, Jr., were trustees. Trust D stock was voted as a result of the agreement of two trustees, the Bank and Mr. Ingalls, Sr. The stock held by Trusts E, F and G was voted, two of the three trustees in each of those trusts being in agreement. Mr. Ingalls, Jr., the third trustee in each of those trusts, did not agree. Under the express provisions of Trusts E, F and G, the action of two trustees in agreement controls as long as there are three trustees. The voting of stock held by Trust A has been considered in the opinion written in the case of First Nat. Bank of Birmingham v. Ingalls, Ala. Sup., 59 So.2d 912, and that question will not be considered here.

The Bank, Mrs. Ellen Gregg Ingalls and M. F. Pixton, as trustees, were confronted with the problem of so voting the stock of Ingalls Iron Works Company held by the several trusts of which they were trustee as to best insure the proper conduct of the business of that company, inasmuch as in

2

some of the trusts the entire corpus consisted of its stock and such stock constituted the most valuable part of the corpus of all of them. The Ingalls Iron Works Company must continue to prosper and pay dividends on its stock or the very life-blood of the trusts will be lost. In voting to continue the management which unquestionably had led the company into its strong financial position, we do not think it can be said that this course was pursued under the domination and control of Mr. Ingalls, Sr., to the detriment of the trust estates.

Mrs. Ellen Gregg Ingalls and M. F. Pixton on November 8, 1948, and in other meetings of the board of directors of Ingalls Iron Works Company, voted with Mr. Ingalls, Sr., and opposed to the wishes of Mr. Ingalls, Jr. No doubt they were importuned by Mr. Ingalls, Sr., to follow this course; yet there is nothing in this record to indicate that such a course resulted in detriment to the trust estates. That Mr. Ingalls, Jr., individually, was thereby financially injured is no ground for removal of the trustees of Trusts C, D, E, F and G. He is not a beneficiary of those trusts.

We have not overlooked the evidence which would justify a finding that at the insistence of Mr. Ingalls, Sr., M. F. Pixton, as trustee of Trusts F and G, filed suits in the circuit court of Jefferson County, in equity, to be permitted to resign as trustee of those trusts and to have the Bank appointed in his stead, although the trust indentures provided in effect that upon the resignation of Mr. Pixton the two remaining trustees should continue to function. This incident is a part of the struggle between father and son and shows that Mr. Pixton's views were in accord with those of Mr. Ingalls, Sr. But again, the fact remains that no injury to the trust estates, as distinguished from Mr. Ingalls, Jr., is made to appear.

 We hold that the evidence does not justify a finding that the Bank, Mrs. Ellen Gregg Ingalls, and M. F. Pixton be removed as trustees on the ground that under the domination and control of Mr. Ingalls, Sr., they have acted to the detriment of the trust estates.

 The decree of the trial court may be subject to the construction that the trustees were removed on the ground that none of them "exercised themselves after the salary of Mr. Ingalls, Jr., was cut off to determine whether the beneficiaries were in need of funds under the terms of the several trusts." The minor beneficiaries were in the custody of their father, Mr. Ingalls, Jr., at the time he was discharged. They were with their mother during the months of June, July and August of that year, 1948. They returned to their father in September. Shortly after their father's remarriage, the older daughter, Elesabeth, went to the home of her paternal grandparents, where she remained until the spring of 1949, except for an occasional visit to the home of her father. She left for boarding school in the fall of 1949. The younger daughter remained with her father except during the summer months when she and her sister were with their mother. The record does not show that any officer of the Bank actually went into the homes where the children were living to inquire as to their needs. The Bank was fully aware of the financial position of all the persons having custody of the children from time to time. The mere fact that the Bank took no affirmative steps to inquire whether distribution to the minors was needed does not justify its removal as a trustee, especially where the record falls far short of showing that the minor beneficiaries suffered in any way because it failed to take such action. M. F. Pixton was as familiar with the surroundings of the children as a member of the family, since he had for years been conversant with the financial position of all the parties concerned and of their ability to provide for the children. That Mrs. Ellen Gregg Ingalls, the grandmother of these children, was unconcerned about their welfare finds no support in the evidence.

 We have pointed out heretofore that one of the grounds set forth in the bill for the removal of respondents was the wrongful investment and use of trust funds. This matter came in by way of amendment to the bill and considerable testimony was taken in regard thereto.

534

However, the trial court in its decree made no mention of this phase of the case. We have carefully considered brief of appellee asserting the decree of the trial court should be affirmed because of the alleged wrongful investment and use of trust funds. The investment of trust funds has not proven to have resulted in any loss to the trust estates and those investments made subsequent to the break between father and son were made in accordance with the manner in which the trusts had been administered for a number of years and, as we understand the record, such investments have subsequently been approved by Mr. Ingalls, Jr., a trustee of those trusts. The contention that trust funds were improperly used relates to payment out of Trusts F and G of fees to the attorney representing M. F. Pixton. Upon complaint, the funds so used were refunded.

The decree of the trial court contains the following provisions:

"This Court is of the opinion that the trustees as now consisted cannot deal with each other properly, fairly, impartially and in a spirit of cooperation; that neither group of trustees will ever believe that the other can or will deal with them fairly and impartially and to the best interest of the beneficiaries.

" * * * In this state of affairs, the Court is of the opinion that to continue in office the present trustees will adversely affect the well-being of the trusts and the beneficiaries thereunder."

Where the trial court speaks of two groups of trustees, we understand that it considered Mr. Ingalls, Jr., as constituting one group and the Bank, Mr. Ingalls, Sr., Mrs. Ellen Gregg Ingalls, and M. F. Pixton as comprising the other. It appears the trial court concluded that since Mr. Ingalls, Jr., and the other trustees have differed as to the manner in which distribution from the trusts should be made and in the voting of the stock held by the trusts, he and the other trustees could not cooperate in carrying out the trusts beneficially to those interested and, therefore, all of them should be removed.

█ It has been said that where inharmonious or unfriendly relations exist between trustees, and where by reason of such inharmonious and unfriendly relations material injury may and is likely to result to the trust estate, a court of equity, to prevent that injury, will exercise the power which it has to remove trustees for proper cause and will remove one or, if the interest of the estate requires it, all of the trustees. Quackenboss v. Southwick, 41 N.Y. 117; Disbrow v. Disbrow, 46 App.Div. 111, 61 N.Y.S. 614, affirmed 167 N.Y. 606, 60 N.E. 1110; In re Boyle, 166 App.Div. 504, 151 N.Y.S. 1022, affirmed 217 N.Y. 673, 112 N.E. 1054; In re Angell's Will, 268 App.Div. 338, 52 N.E.2d 52, affirmed 294 N.Y. 923, 63 N.E.2d 117; Spaulding v. Hotchkiss, Sup., 62 N.Y.S.2d 151; May v. May, 167 U.S. 310, 17 S.Ct. 824, 42 L. Ed. 179.

We are unwilling, in view of the trial court's limitation on evidence relating thereto, to express an opinion on the correctness of the decree appealed from in so far as it bases the removal of Mrs. Ellen Gregg Ingalls, M. F. Pixton, and the Bank on the existence of an inharmonious relationship between the two groups of trustees and the resulting possibility and probability of material injury to the trust estates because of such relationship.

█ Mrs. Ellen Gregg Ingalls has assigned as error many rulings of the trial court refusing to permit her to show the conduct of her son, Robert I. Ingalls, Jr., toward her and his father. The trial court seems to have accepted the admitted fact that a breach had occurred between father and son and concluded the cause of the breach and the conduct of all the parties toward each other thereafter could not shed any light on the issue of whether the trustees should be removed because of their inability to cooperate in the performance of their duties.

We will not attempt to treat each of the assignments of error made by the appellant Mrs. Ellen Gregg Ingalls as to the exclusion of evidence. But we think the trial court should have permitted evidence to be introduced going to show the cause of

the difficulty between father and son; that the son had attempted to influence the testimony of his mother by threats; the attitude of the son toward his father and mother both before and after the difficulty; that the reason Mr. Ingalls, Jr., could not work amicably with his cotrustees was that he deliberately refused for reasons of his own to do so; that Mr. Ingalls, Jr., sought removal of his cotrustees because of his desire to gain control of Ingalls Iron Works Company.

We are aware of the fact that it has been said: "It is not very material to inquire how such relationships originated, or by whose fault, unless such inquiry should of itself disclose that the conduct of one had been such as to render him disqualified to act as trustee. It is sufficient, to ascertain the fact, to warrant the removal of one and the appointment of another in his place, to secure the faithful performance of the trust." Quackenboss v. Southwick, supra. See May v. May, supra. But in a case such as we have here, where the very feed bag of the trust estates, the Ingalls Iron Works Company, is directly involved, we do not think the issue of inharmonious relationship between the trustees should be so narrowly limited. To adopt the view that the mere existence of such relationship between the trustees is sufficient to warrant the removal of all of them would result in displacing, as trustees of trusts holding many shares of stock of Ingalls Iron Works Company, those who by virtue of their experience and close association with the affairs of that company should be best qualified to see that through efficient management it continues to supply the trust estates with income.

The best interests of the trust estates must not be confused with the personal welfare of Mr. Ingalls, Jr. This case does not involve directly the question of whether Mr. Ingalls, Jr., himself has suffered because of the action of his father. His desire to regain his position with Ingalls Iron Works Company, with which he was so long associated and in which he owns more stock than other individual, is, of course, understandable. But he should not be permitted to effectuate the removal of his cotrustees in order to gain that end on the ground of dissension between himself and his cotrustees, if it should be shown that such dissension resulted from his unwarranted conduct. We feel that the evidence offered for this purpose should have been admitted.

■■ Dr. Seale Harris should have been permitted to express his opinion as to the mental condition of Mr. Robert I. Ingalls, Jr., as bearing on his credibility as a witness. Ellarson v. Ellarson, 198 App.Div. 103, 190 N.Y.S. 6; McAllister v. State, 17 Ala. 434, 52 Am.Dec. 180.

Some of the assignments of error made by M. F. Pixton are of a nature somewhat similar to those made by Mrs. Ellen Gregg Ingalls. But in any event, in view of the way the case was tried below and the nature of the evidence excluded, bearing as it does on the conduct of all the cotrustees of Mr. Ingalls, Jr., we think the error in excluding evidence of the character heretofore summarized should affect alike the appeals of Mrs. Ellen Gregg Ingalls, M. F. Pixton, and the Bank. City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276; Luquire Ins. Co. v. Parker, 241 Ala. 621, 4 So.2d 259; St. Paul Fire & Marine Ins. Co. v. Johnson, 256 Ala. 690, 57 So.2d 80.

In view of the foregoing, the decree of the trial court as to the appellants Mrs. Ellen Gregg Ingalls, M. F. Pixton, and the First National Bank of Birmingham is reversed and the cause is remanded. The appeal of Robert I. Ingalls, Sr., has been abated.

■■ We are not called upon to review the action of the trial court in removing Robert I. Ingalls, Jr., as a trustee of Trusts B through G, but since the decree of the trial court has been reversed in part because of exclusion of evidence, we think justice demands that we declare the effect of the reversal on Robert I. Ingalls, Jr. We think that feature of the decree which removed Robert I. Ingalls, Jr., as a trustee should be treated as in the nature of a condition completed (it is not so expressed) to the removal of the other trustees. A condition prescribed to relief, of course, falls *ipso facto* with the fall of that feature

of the decree which grants the relief on that condition. The bill contained an offer to do equity. The trial court in its decree states that Mr. Ingalls, Jr., had submitted himself to the jurisdiction of the court. The trial court, as to Mr. Ingalls, Jr., evidently acted on the principle that in equity one seeking relief and offering to do equity may be subjected to a condition on which relief is granted. That is a theory approved by the decisions of this court. English v. Huckaba, 219 Ala. 526, 122 So. 841; Federal Land Bank v. Davis, 228 Ala. 85, 152 So. 226. See 30 C.J.S., Equity, p. 994, note 59. We think, therefore, that the effect of the reversal of the decree as to appellants Mrs. Ellen Gregg Ingalls, M. F. Pixton, and the First National Bank of Birmingham operates to reverse as to Robert I. Ingalls, Jr.

The decree of the trial court removing Mrs. Ellen Gregg Ingalls, M. F. Pixton, the First National Bank of Birmingham, and Robert I. Ingalls, Jr., is reversed and the cause is remanded. Except as to Robert I. Ingalls, Sr., whom death has removed as a trustee, the decree of the trial court is reversed and the cause is remanded.

Reversed and remanded

All the Justices concur except FOSTER, J., not sitting.