49 So.2d 782

### PENNEY et al. v. PRITCHARD & McCALL.
### 6 Div. 65.

Supreme Court of Alabama.
Nov. 24, 1950.

Rehearing Denied Jan. 11, 1951.

14

Graham, Bibb, Wingo & Foster, Lange, Simpson, Robinson & Somerville, and White, Bradley, Arant & All, all of Birmingham, for appellants.

Pritchard & McCall and Victor H. Smith, all of Birmingham, for appellees.

FOSTER, Justice.

The question on this appeal is whether it is lawful to allow an attorney's fee out of the estate of a non compos mentis for services in representing the petition for an inquisition into his sanity, and for the trial of the same in which he was adjudged of unsound mind and a guardian appointed, and also for resisting proceedings to set aside and vacate the inquisition.

The ward, James E. Penney, was a very wealthy man eighty-eight years old when the petition was filed by one of his two children on November 3, 1947. He had been confined to his bed more than two years before the petition was filed. The guardian, who was his other child, administered his estate until the death of the ward on May 17, 1948.

On the final settlement of the guardianship in the Probate Court of Jefferson County, appellees here filed a petition for the allowance of an attorney's fee payable to them for services rendered under employment by Mrs. Caryl Penney Binford, petitioner in the inquisition proceeding, for representing her in having her father declared of unsound mind and in resisting efforts of Paul M. Penney, the other child of the ward, and of the guardian ad litem to have the adjudication set aside. ·The petition for the attorney's fee was resisted by Paul M. Penney, the guardian of the ward and executor of the will of the deceased ward. The probate court disallowed the petition. The court did allow a fee to counsel representing the guardian from the time of his appointment through the settlement of the estate of the ward in the amount of $5,000, and a fee of $500 for the guardian ad litem in resisting the petition to adjudicate the ward of unsound mind.

Appellees took an appeal to the circuit court which reversed the judgment of the probate court and remanded the cause to that court. Thereupon the guardian and executors of the will of deceased appealed to this Court.

The question which we stated at the outset is the only one presented on the main appeal.

The inquisition was under section 11, Title 21, Code of 1940. It gives the authority to any of the relatives or friends of the person alleged to be of unsound mind. As we have said, the petition was filed by a daughter who with her brother, Paul M. Penney, are the only children and the next of kin of the ward.

The petition for inquisition might have been filed by a friend and not a relative. The ward may be still living when the effort is made to collect the fee and the question of law would be the same. So that it is not one of fairness in requiring the other heir of the deceased ward to share in that expense, but it is whether the funds of the ward, if he were still living, should thus be made to bear that expense.

The only general provision for costs in such matters is in section 19, Title 21, Code, with reference to an application to revoke the proceedings on the ground that the ward is then of sound mind. That statute has no application here.

The fee of the judge of probate in the inquisition proceeding is $5, without any provision for its taxation or payment. Section 29, Title 11, Code. The fees of the sheriffs are the same as allowed for similar services in other cases to be paid out of the county treasury, *if such person has no estate*. Section 34, Title 11, Code. The fees of jurors in inquisition proceedings are to be paid out of the county treasury. Section 16, Title 11, Code. Likewise the pay of witnesses is to be made the same as jurors as provided in section 16, supra. Section 52, Title 11, Code.

Under the Codes of 1852, 1876, 1886 and 1896, the fees of jurors and witnesses in such cases were made payable out of the estate of the person of unsound mind or, if there be no estate, out of the county treasury. Section 2763, Code of 1852; 5054, Code of 1876; section 3695, Code of 1886; section 1385, Code of 1896. Under the Code of 1907, section 1385, and that of 1923, section 7293, the pay of jurors is made out of the county treasury as under the Code of 1940. The pay of witnesses is required by the Code of 1907, section 3681, and by the Code of 1923, section 7241, to be paid as jurors are out of the county treasury, the same as under the Code of 1940.

So that the only provision of law which looks like a requirement that any of the costs, other than attorneys' fees, be paid out of the estate is by implication as to sheriffs' fees. Fees and costs can only be taxed pursuant to a statute. Section 1, Title 11, Code.

We recognize the principle that "In absence of contract, statute, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by opposing side." Bell v. Bell, 214 Ala. 573, 108 So. 375, 376, 45 A.L.R. 935; Wilks v. Wilks, 176 Ala. 151, 57 So. 776.

"Costs" sometimes include an attorney's fee dependent upon the circumstances under which it is used. Williams v. Flowers, 90 Ala. 136, 7 So. 439.

Section 63, Title 46, Code, is largely an enactment of the ancient principle of equitable origin, and there enforceable, which was referred to as costs between solicitor and client and said statute makes it apply at law as well as in equity when justified. That principle is that a complainant in equity, who at his own expense has maintained a successful suit for the preservation protection or increase of a common fund or of common property, or who has *created at his own expense or brought into court* a fund in which others may share, may have paid to him, or sometimes directly to his attorney, an attorney's fee for such services. 14 Am.Jur. 47, section 74; Sprague v. Ticonic National Bank, 307 U. S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Wallace v. Fiske, 8 Cir., 80 F.2d 897, 107 A.L. R. 750. The principle is analyzed and annotated in 107 A.L.R. 754 et seq; 49 A.L. R. 1149; 9 A.L.R.2d 1150.

This principle has often been referred to and called the "doctrine of Trustees v. Greenough," 105 U.S. 527, 26 L.Ed. 757, and is cited and relied on in the case of

Sprague v. Ticonic National Bank, supra. The annotation of the question in 9 A.L.R. 2d 1150 cites many late cases.

This writer was the author of the Act as it appears in section 63, supra, when he was a member of the Legislature of 1903, and is familiar with the difficulties obtaining before it was passed in getting an allowance for attorneys' fees in the probate courts. Judge Mayfield in preparing the Code of 1907 put a part of the Act in the chapter on partition, in which he added the clause that the services must be for the common benefit of all, section 5219, section 9319, Code of 1923, and also set out the entire Act in section 3010, Code of 1907, 6261, Code of 1923, but did not there include a clause as to the common benefit. That clause is not brought forward into the Code of 1940.

We do not think particular significance should be attached to the fact that it was left out of the Code of 1940. We think it is proper to hold that such a condition to an allowance of the fee persists under section 63, Title 46, Code of 1940. Wilkinson v. McCall, 247 Ala. 225(3), 23 So.2d 577; Matthews v. Lytle, 220 Ala. 78, 124 So. 197; Coker v. Coker, 208 Ala. 239, 94 So. 308; Graham v. Graham, 207 Ala. 648, 93 So. 660; Bidwell v. Johnson, 191 Ala. 195, 67 So. 985.

In the case of Bidwell v. Johnson, 195 Ala. 547, 70 So. 685, this Court allowed an attorney's fee for services rendered in removing an estate from the probate to the chancery court. *Likewise in probating a will.* Powell v. Labry, 210 Ala. 248, 97 So. 707.

We have held that costs include an attorney's fee incurred by a special administrator who successfully contested a will. Stanley v. Beck, 242 Ala. 574, 7 So.2d 276. See, also, Mitchell v. Parker, 227 Ala. 676, 151 So. 842.

Referring now to the status of the law in Alabama before the enactment of what is now section 63, Title 46, Code. In the case of Strong v. Taylor, 82 Ala. 213, 2 So. 760, decided before the statute, the equitable principle is recognized and is based upon Trustees v. Greenough, supra, and is said to be founded in natural equity to make a proper distribution of the burdens among those to whom the benefits accrue. That case also cites Grimball v. Cruse, 70 Ala. 534, in which the Court declared the principle as existing prior to our statute.

In the case of Anniston Loan & Trust Co. v. Ward, 108 Ala. 85, 18 So. 937, this Court again referring to Grimball v. Cruse, supra, and quoting from it, declared the same principle and also referred to the fact that it was an application of the principle of equality of burden exemplified in Trustees v. Greenough, supra.

In the case of Taylor v. Crook, 136 Ala. 354, 34 So. 905, the question was whether attorneys' fees should have been allowed in their favor as a claim against the estate for services rendered in probating a will of the deceased. There was no contention but that the executor could have paid it and claimed credit on his settlement. Powell v. Labry, supra. The only question was whether the allowance could be made directly to the attorneys. There was then in existence no such statute as section 63, supra, and the ancient equitable principle was not considered. The allowance was denied, but it may now be made directly to the attorney under section 63, Title 46, supra. Wilkinson v. McCall, supra.

While section 63, Title 46, Code, is not in the exact language of the equitable principle, it was intended to be applicable in the probate court under the same circumstances although that was not a court of equity.

The Probate Court of Jefferson County is now in such matters a court administering equitable rights when pertinent to administrations before it, Title 62, section 181 [1], Pocket Part, and, therefore, the old principle there obtains as it did in equity. Section 63, Title 46, supra, makes it apply to probate courts elsewhere in the State. That section does not in terms include the *creation of a trust fund,* but only the *administration* of a trust fund. But the equitable principle applies to its creation. The inquisition followed by a guardianship resulted in the creation of a trust estate consisting of all the property

of the ward administered for his sole direct benefit as long as he should live, and for no other purpose.

## "Necessaries."

Section 8, Title 57, Code, provides that where "necessaries" are sold to a person of unsound mind he must pay a reasonable price therefor. That includes goods suitable to his condition in life. Section 43, Title 9, Code, is to the same effect. We have held that taxes are necessaries under this statute. Wiggins Estate Co. v. Jeffery, 246 Ala. 183, 19 So.2d 769. There are many goods and services properly termed necessaries under that statute. Ragan v. Williams, 220 Ala. 590, 127 So. 190, 68 A.L.R. 1182; Flexner v. Dickerson, 72 Ala. 318.

Section 284, Buswell on Insanity is as follows: "Costs and counsel fees reasonably incurred by either party in proceedings to establish the lunacy of a person are regarded, both at law and in equity, as necessary expenses incurred for the benefit of the lunatic, and are recoverable against him or his estate. In an early case it was held that a solicitor employed by the party alleged insane could have no action against such party for his costs, but might have a lien on real estate recovered for the use of the lunatic, while in the hands of the committee, but not in the hands of the lunatic's heir. But the modern view of the matter is that the costs, charges, and expenses in lunacy proceedings are not to be considered so much as a charge on the lunatic's real estate as a simple contract debt due by the lunatic for necessaries." See, also, Alexander v. Alexander, 8 Ala. 796.

There are many cases which hold that an attorney's fee in such a proceeding is a proper charge against the estate of the non compos mentis. They are where there is a statute which allows the costs and expenses to be thus paid. They also emphasize the value of the proceeding to the estate to care for and preserve it. We cite them as follows: Wier v. Myers, 34 Pa. 377; In re Sulk, 74 N.J.Eq. 736, 70 A. 661; In re Bundy's Estate, 44 Cal.App. 466, 186 P. 811; McCracken's Case, 45 Pa.Super. 229; In re Frankish, 86 N.J.Eq. 280, 98 A. 395; In re Gould, 255 App.Div. 433, 8 N.Y. S.2d 714; Brownlee v. Switzer, 49 Ind. 221. 32 Corpus Juris 651 is to that effect, citing the above cases; also 44 Corpus Juris Secundum, Insane Persons, § 34, page 99, note 45, citing also In re Goldberg, 108 N.J.Eq. 366, 155 A. 137. We do not think they are all controlling here, but the discussion in many of them shows that such fees are properly termed necessaries.

In Ex parte Graham, 136 Fla. 20, 186 So. 202, an attorney's fee was disallowed in the circuit court. It is not clear from the report whether the court was sitting in equity or at law. A next of kin of the incompetent filed a petition in the circuit court, as authorized by the statute of Florida, praying for appointment of a guardian of the person of the incompetent and a curator to take charge of her property. The prayer of the petition was granted. A firm of attorneys filed their petition in said court at a later date for the purpose of having a solicitor's fee awarded them from the estate of the incompetent for services rendered in having the guardian and curator appointed for the incompetent. The petitioners contended that since there was authority to pay an attorney's fee in a proceeding in lunacy that their services rendered under said special statutory authority should be paid by analogy to a lunacy proceeding. The court observed that the proceeding is somewhat analogous to a lunacy proceeding, but there was little analogy between it and a chancery proceeding where a fund is brought into court for settlement and distribution. It was said that in the latter case the *rem* is the thing in litigation, while in this proceeding the *rem* is merely incidental. Upon the basis of that reasoning the court disallowed the attorney's fee.

We are not willing to follow that course of reasoning. The inquisition resulted in a finding of the incompetency of the party and directly and immediately in the appointment of a guardian who in the instant case was the only other next of kin of such incompetent who is here ob-

20

jecting to the fee. The proceeding was necessary under the law of this State in order to appoint a guardian of the incompetent. Section 10, Title 21, Code. The guardianship was the result sought to be accomplished and that created a trust fund, so that the creation of the trust fund and its administration was the sole purpose sought to be accomplished. It is the same in principle as an attorney's fee for services in probating a will.

We think that the allowance of an attorney's fee can be sustained on the theory that as here rendered it was "necessary" to the interest of the non compos mentis under our statute, and also that it created a trust fund and brought it into court for administration under the "doctrine of Trustees v. Greenough," supra, otherwise called costs as between solicitor and client, as the same was enacted into what is now section 63, Title 46 of our Code, which serves the same purpose.

Appellees have cross-assigned errors upon the ground that the trial court in reversing the judgment of the probate court remanded the matter to that court for decision. The trial in the circuit court was on the same evidence and facts that were presented in the probate court as shown by an agreed statement of facts. We see no reason why the cause should have been remanded to the probate court for the rendition of the judgment in favor of appellees. We think the circuit court should have reversed and rendered the judgment, and this Court will proceed to render such judgment as should have been rendered in the circuit court. Sections 775, 785 and 810, Title 7, Code. The judgment of the circuit court is therefore modified so as to render the judgment in favor of appellees against appellant Paul M. Penney as guardian of J. E. Penney for the sum of $7,500, which is shown without controversy to be a reasonable fee.

Modified and affirmed.

BROWN, LAWSON and STAKELY, JJ., concur.