In the Matter of the Accounting of BANKERS TRUST COMPANY, as Trustee under the Will of MARCUS DALY, Deceased.

Surrogate's Court, New York County, April 3, 1953.

852

*George B. Brooks* for trustee, petitioner.

*Hoch Reid* for Marcus Daly, III, respondent.

*Cohen & Bingham* for Mary D. Gerard, as executrix of James W. Gerard, deceased, respondent.

*James R. Cherry* and *William J. Butler* for Lele H. Daly, respondent.

COLLINS, S. Decedent's will directs that trust investments "shall be made in such securities as are legal investments for Savings Banks in the State of New York". The will was executed in the year 1927 and was admitted to probate in the year 1930. It appears that the trustees have experienced no difficulty administering the trusts within the mandate of the testator but the surviving trustee now feels that recent amendments to section 235 of the Banking Law effected by chapter 705 of the Laws of 1952, may present problems of investment at some

future time and that a present construction of the will should be had.

The court finds that the testator intended to grant to his testamentary trustees the powers of investment that a savings bank would have and, consistent with such intention, since the law prescribing the type of investment available to a bank would be the law in effect at the time of the making of the purchase, the identical rule applies to the testamentary trustees and they have available to them the types of investments fixed by the law in effect at the time of investment by the trustees. While the confusion of tenses in the testator's language creates some ambiguity, it would seem that the use of the present tense in the expression " such securities as are legal " cannot be regarded reasonably as referring to the date of the will's execution. It is apparent that the testator was referring both to investments necessarily to be made at a future time and to the eligibility of such investments at that future time. The reference intended was to the time of the making of an investment. Although precedent is lacking for such interpretation of testamentary language authorizing investments of the types permitted to savings banks, the attitude of the courts has been to construe investment directions as flexible standards keeping pace with changes in statutory requirements and economic conditions unless specific directions of a testator bind his trustees to an outdated formula (*Matter of Hamersley,* 152 Misc. 903, 908–909; *Matter of Westerfield,* 278 App. Div. 153, 158; *Matter of Arms,* 193 Misc. 427). The primary conclusion is that the investment authority granted in the will is coextensive with that granted to savings banks by the Banking Law at the time of a particular investment. Hence all amendments to that statute subsequent to the testator's death altered the investment authority of the trustees.

The recent amendments to section 235 of the Banking Law, while permitting savings banks to invest in preferred and common stocks of corporations, impose limitations upon the extent of such investments. The surviving trustee points out that the statutory restrictions upon these kinds of investments are so phrased in the statute as to be peculiarly applicable to banks and inapplicable to testamentary trusts. Among the restrictions upon investments found in the statute are: a limitation to a total not in excess of the amount of the surplus fund and undivided profits of the savings bank; another limitation to a total not in excess of 5% of a bank's assets or an amount equal to 50% of its surplus fund and undivided profits, whichever is

less, and a further limitation to an amount not in excess of 3% of the bank's assets or an amount equal to one third of its surplus fund and undivided profits,. whichever amount is less. It is obvious that limitations computed on " a surplus fund " or " undivided profits " have no application to testamentary trusts and, inasmuch as the percentage restrictions fixed by the statute cannot be applied realistically to a trust fund, the difficulty in application is not confined to nomenclature. An effort to apply the statutory limitations to a trust by analogy would be forced and purposeless. It must be concluded that such provisions of section 235 of the Banking Law cannot be applied intelligently to testamentary trusts.

It has been suggested that testator's will may be construed as a designation of the *kinds* of securities in which the trust may be invested and that other restrictions applicable to savings banks are not binding upon the testamentary trustees. In *Matter of Wade* (270 App. Div. 712, affd. 296 N. Y. 244) it was held that, in the year 1937, section 111 of the Decedent Estate Law and section 21 of the Personal Property Law authorized investments in the same *kind* of securities in which savings banks might invest and such statutes imposed no limitation upon the percentage of the trust fund that might be invested in an obligation. The statutes there considered used the expression " same kind of securities " and thereby provided the basis for the ruling that the sole limitation was in the word " kind " with no limitation upon the total amount of the investment. The same reasoning cannot be applied to the will of the testator. He employed the expression " such securities as are legal investments for Savings Banks " and thereby he embraced all the restrictions imposed upon the banks.

It must be recognized that the testator intended to impose a limitation upon the investment powers of his trustees. Had the testator omitted any investment provision from his will, the trustees, although limited to statutory investments, would have had a broader field of investment than the one provided by the will (*Matter of Putnam,* 42 N. Y. S. 2d 367). The course of events has to some extent defeated the purpose of the testator. The rewriting of section 235 of the Banking Law in a way which makes many of its provisions inapplicable to trust investments prevents the testamentary trustees from acting under such provisions. There result limitations upon the trustees' investment powers which the testator did not impose and which narrow the trustees' investment field to an extent that the testator could not have contemplated. Quite analogous situations have existed

when changed economic conditions have made a particular type of investment unavailable with the consequence that the purpose of a testator to limit trust investment to that type has been stultified. In such instances the courts have permitted trust investments in so-called legals for such time as the type of investment specified by the testator continued to be unprocurable (*Matter of Flanagan*, 199 Misc. 842 and cases there cited). Like relief is granted here. Trust investments may be made in the securities authorized by law in the same manner that would be permissible if the will lacked the restrictive provision limiting investments. This ruling will be controlling so long as the provisions of law specifying permissible investments for savings banks contain formulae inapplicable to testamentary trusts. With the field of legal investments so opened, the surviving trustee may exercise the privilege granted by paragraph m of subdivision 1 of section 21 of the Personal Property Law to purchase securities of corporations within the limitations of that statute. The 35% limitation imposed by that statute will apply to all securities not made eligible by paragraphs (a) to (*l*) inclusive of subdivision 1 of that statute (*Matter of Peck*, 199 Misc. 1051). The court does not feel itself privileged to devise an investment plan either by writing into section 235 of the Banking Law a per centum limitation comparable to that found in subdivision 1 of section 21 of the Personal Property Law or by attempting to apply that subdivision of the Personal Property Law to investment powers found in the Banking Law. Paragraph (*l*) of subdivision 1 of section 21 of the Personal Property Law permits the investments authorized by certain stated subdivisions of section 235 of the Banking Law. A question not presented for decision in this proceeding is whether paragraph (*l*) of subdivision 1 of section 21 of the Personal Property Law describes only a *kind* of securities permissible for investment, applying the rationale of *Matter of Wade* (*supra*), or a testamentary trustee investing under authority of that provision is subject to all the limitations contained in subdivisions 7, 13, 14 and 19 of section 235 of the Banking Law.

The account reports the payment of legal fees to the attorneys who here represent the accounting trustee. Such fees have been charged to the trust under the fourth article of the will which is referred to in the account as the Lele H. Daly trust. Objections to the fees have been interposed by the income beneficiary and by the remainderman of the trust. The parties have stipulated that the issues raised by these objections be determined by the court upon the basis of the affidavits and memo-

randa of law submitted by the parties. From these papers the court has garnered certain facts which it considers pertinent to the issues.

The trust estate, the individual who is a trustee and a third person were equal holders of all the shares of a corporation. In 1941 the testamentary trustees, the individual who is a trustee and their coventurer sold their respective shares to the same purchaser. Thereafter the individual trustee demanded that the corporate trustee join with him in an action against the purchaser and the third person who had been a shareholder and coventurer with them. The basis for the action was the individual trustee's charge that such third person in selling his corporate shares had conspired with the purchaser to breach a fiduciary duty to his coventurers and thus to obtain a price for his shares higher than that paid by the purchaser for the shares of the trust estate and the individual trustee. When so pressed to institute an action the corporate trustee sought an opinion as to its legal obligations under the circumstances. The attorneys whose fee is challenged rendered an opinion to the effect that litigation by the corporate trustee would not be successful. For the services in inquiring into the facts and the law and in formulating the opinion the attorneys made a charge of $8,500 in a bill rendered to the corporate trustee on October 1, 1945. One half of this fee has been allocated to the trust for the benefit of Lele H. Daly.

In July, 1946, Lele H. Daly, the testator's widow, instituted an action against the purchaser of the stock, the trustees and their former coventurer. The plaintiff asked a rescission of the sale of the stock or, in the alternative, for damages of $96,866 from the defendants other than the trustees. The corporate trustee appeared and answered in this action but the individual trustee did not. No further steps in prosecution of the action were taken by the plaintiff.

In May, 1947, an action was commenced by the individual trustee in his personal interest and as testamentary trustee against the purchaser of the stock, the corporate trustee and the third former shareholder. No relief was sought against the corporate trustee but damages in the amount of $96,866 were asked on behalf of the trust. This action was prosecuted and at the time the trustees filed their account herein the action was pending partially tried.

It does not appear from the facts provided the Surrogate that the corporate trustee ever formally questioned the authority of its cotrustee to institute an action alone or that any other

defendant in the action attempted to obtain a summary disposition of the suit on the ground that one trustee lacks power to maintain an action without the concurrence of a cotrustee (*Jones* v. *Incorporated Vil. of Lloyd Harbor,* 277 App. Div. 1124, 1125, affd. 302 N. Y. 718 and authorities cited in *Matter of Luckenbach,* 278 App. Div. 114, 119, revd. 303 N. Y. 491, 496).

For legal services in answering the complaint of the widow, in appearing in the action instituted by the individual trustee, in preparing for and attending the trial of that action so far as it had progressed by September 6, 1951, and for general services between October 1, 1945, and September 6, 1951, in advising the corporate trustee respecting the problems arising from the sale of the corporate shares the attorneys charged the corporate trustee $15,000. Half of that charge was allocated to the Lele H. Daly trust. The balance of the fees has been charged to a trust which is not being accounted for presently.

Both objectants to the fees concede that the corporate trustee was entitled to seek advice as to the propriety of instituting suit when it was urged to sue by its cotrustee. In respect of the fee for such services the objectants challenge only the amount of the charge. The trust remainderman asserts that no charge for other services was justified. The income beneficiary acknowledges that some additional services were rendered in connection with the two actions but she asserts that much of the services performed in the suit begun by the individual trustee were not chargeable to the trust estate.

An affidavit of a member of the firm of attorneys is submitted in support of the fees. This affidavit sets forth the services in general terms and states the time consumed in the rendition of services. Over 321 hours of attorneys' time were devoted to procuring facts and preparing an opinion advising against the commencement of a suit. The precise manner in which this time was consumed is not stated. Presumably the fundamental question, whether or not the trustees received the best obtainable price for the corporate shares, involved a valuation of the shares. An affirmative answer to that question would be quite decisive of the problem. The affidavit in support of the fee does not disclose the questions of law or fact involved in the preparation of the opinion but the problems must have been consequential to have occupied these highly reputable attorneys for the time stated by them and accepted without question by the objectants. On a time basis alone the fee must be regarded as reasonable. The objections to the charge of $4,250 to the Lele H. Daly trust are overruled.

A portion of the $15,000 fee represents compensation for advice to the trust company regarding charges of wrongful conduct made against it by its cotrustee. It is said that the individual trustee charged the trust company with collusion, self-dealing and concealment. Expenditures in defense against such accusations would be a proper charge to the trust estate (*Matter of Bishop*, 277 App. Div. 108). Other services consisted of the representation of the trust company in the action that the widow began but never pressed but the main body of services pertained to the representation of the trust company in the action instituted by the individual cotrustee. That action had not terminated when the bill for services up to September 6, 1951, was rendered and the action was still pending at the time this accounting proceeding was begun. The fact that the bill was rendered in an undetermined action precludes an appraisal of services on the basis of ultimate accomplishment or benefit. Although the trust company was a nominal defendant its interest as fiduciary was in the success of the plaintiff, its cotrustee, inasmuch as the complaint sought damages for the trustees of $96,866. The trust company had no apparent identity of interest with its codefendants. Concededly the company's approach to the litigation was a cautious one since the company was apprehensive of a claim against it for breach of some fiduciary duty. The memorandum of the corporate trustee states that its attorneys participated in the actual trial only on occasions when it could be anticipated that an attack on the corporate trustee might be made and at other times a junior attorney attended as an observer only. As noted before, the corporate trustee could properly retain counsel to defend it at the expense of the trust but the legal services must be valued on the basis that they were rendered for the protection of the corporate trustee and not either to augment the trust estate or to protect it from depletion. The affidavit of services covers a period expiring September 6, 1951. The action was still pending in early 1953 when the objections herein were submitted for decision. The court regards the sum of $10,000 as reasonable compensation for the services referred to in the attorneys' bill of October 10, 1951. Their disbursements are held to be proper. One half of such allowed sums is chargeable to the Lele H. Daly trust. The objections are sustained to the extent that a greater charge has been made.

The issue raised by the objection of Mary D. Gerard will be heard on the 6th day of May, 1953, at 10:30 A.M.