96 So.2d 266

Robert I. INGALLS, Jr., as Cotrustee and Guardian, et al.

v.

Francis H. HARE et al. (two cases).

6 Div. 648–649.

Supreme Court of Alabama.

June 20, 1957.

Jas. P. Bradford and Clifford Reeves (guardian ad litem), Birmingham, for appellants.

Lange, Simpson, Robinson & Somerville, Birmingham, pro se, appellee and cross-appellant.

Waites & Tucker, Birmingham, pro se, appellee and cross-appellant.

Cabaniss & Johnston, Birmingham, pro se, appellee.

Francis H. Hare, pro se and Wilkinson & Skinner, Birmingham, for appellee and cross-appellant Hare.

LAWSON, Justice.

In several cases previously decided by this court, we have been called upon to review decrees of the circuit court of Jefferson County, in equity, which have dealt with the so-called Ingalls Trusts, which for convenience have been designated as Trusts A, B, C, D, E, F, and G.

On November 13, 1950, the circuit court of Jefferson County, in equity, in a cause bearing Circuit Court No. 78710, rendered a decree which in pertinent part reads as follows:

"1. The Trustees (including the complainant, but excluding the Birmingham Trust National Bank, not here involved) of the several Trusts here involved from 'B' to 'G', both inclusive, be and they are hereby separately and severally removed effective thirty (30) days from the date hereof, or as soon thereafter as their successors are appointed by the court and qualified."

That decree was rendered in a cause where the complainants in the amended bill were: (1) Elesabeth Ridgley Ingalls and Barbara Gregg Ingalls, minors, who sued by their guardian, Robert I. Ingalls, Jr.; (2) Robert I. Ingalls, Jr., as trustee for the use and benefit of Elesabeth Ridgley Ingalls and Barbara Gregg Ingalls. The respondents to the amended bill were Robert I. Ingalls, Sr., Mrs. Ellen Gregg Ingalls, the First National Bank of Birmingham, and M. F. Pixton. Robert I. Ingalls, Jr., referred to in the decree of November 13, 1950, from which we quoted above, as the "complainant," is the father of Elesabeth Ridgley Ingalls and Barbara Gregg Ingalls, who for present purposes may be said to be the sole beneficiaries of Trusts "B to G."

Robert I. Ingalls, Jr., was a cotrustee of each of those trusts except Trust D, of which he was the settlor. The cotrustees of Trust D were Robert I. Ingalls, Sr., and the First National Bank of Birmingham. The cotrustees of Robert I. Ingalls, Jr., in the other trusts involved in Case No. 78710 at the time the suit was filed were as follows: Trust B, The First National Bank of Birmingham; Trust C, his father, Robert I. Ingalls, Sr.; Trust E, his mother, Ellen Gregg Ingalls, and the First National Bank of Birmingham; Trust F, his mother, Ellen Gregg Ingalls, and M. F. Pixton; Trust G, his father, Robert I. Ingalls, Sr., and M. F. Pixton.

The purpose of the amended bill filed in the cause bearing Circuit Court No. 78710 was to have the respondents to that bill removed as trustees of the several trusts involved. There was no pleading filed seeking the removal of Robert I. Ingalls, Jr., as trustee of any of the trusts. Nevertheless he was included in the decree of removal on the theory that he had submitted himself to the jurisdiction of the court and that the evidence showed the need of new trustees to administer the trusts promptly, impartially, capably and fairly, without hindrance from self-interest.

The respondents in the cause bearing Circuit Court No. 78710 appealed to this court from the decree of November 13,

1950, rendered in that cause. Robert I. Ingalls, Jr., did not take a cross appeal or make cross assignments of error.

In the court below and in this court the firm of Lange, Simpson, Robinson and Somerville, of Birmingham, represented Robert I. Ingalls, Sr., and his wife, Ellen Gregg Ingalls. The firm of Cabaniss and Johnston, of Birmingham, represented the First National Bank of Birmingham, and the firm of Waites and Tucker, of Birmingham, represented M. F. Pixton. Hon. Francis H. Hare and Hon. Charles W. Greer, of Birmingham represented the "complainant" below.

When the cause reached this court it was designated as 6 Div. 194. After submission here the death of the appellant Robert I. Ingalls, Sr., removed him as a trustee. On June 26, 1952, this court in an opinion reported in Ingalls v. Ingalls, 257 Ala. 521, 59 So.2d 898, reversed the decree of November 13, 1950, removing Mrs. Ellen Gregg Ingalls, M. F. Pixton, the First National Bank of Birmingham, and Robert I. Ingalls, Jr., as trustees of the several trusts. The cause was remanded.

On the same day that the original bill in 78710 (6 Div. 194) was filed in the circuit court of Jefferson County, in equity, a bill was filed in that court by Robert I. Ingalls, Jr., as a trustee and beneficiary of Trust A against the First National Bank of Birmingham and against his mother, Ellen Gregg Ingalls, in her individual capacity and in her capacity as a trustee of Trust A, seeking the removal of the First National Bank of Birmingham as a trustee of Trust A. That cause, which was given Circuit Court No. 78707, was consolidated by the trial court with the cause bearing Circuit Court No. 78710 for trial. §§ 221 and 259, Title 7, Code 1940. Both cases were submitted for final decree in July, 1950, and separate decrees were rendered on November 13, 1950. The decree rendered and entered in 78707, supra, removed all of the trustees of Trust A, including Robert I. Ingalls, Jr., although no pleading had been directed to the end that he or Mrs. Ellen Gregg Ingalls be removed.

The First National Bank of Birmingham and Mrs. Ellen Gregg Ingalls prosecuted an appeal to this court from the decree rendered in 78707, supra. Robert I. Ingalls, Jr., did not appeal or make cross assignment of error. Upon submission here that appeal was given our number 6 Div. 193. We disposed of that appeal on June 26, 1952, the same day on which we decided 6 Div. 194. The opinion of this court in 6 Div. 193 concluded in this language:

"The decree of the lower court is reversed and the cause is remanded as to The First National Bank of Birmingham as Trustee of Trust A and also as to Mrs. Ellen Gregg Ingalls as Trustee of Trust A and the decree of the trial court is also reversed and the cause remanded as to Robert I. Ingalls, Jr., for the same reasons stated in Ingalls v. Ingalls, 257 Ala. 521, 59 So. 2d 898." First Nat. Bank of Birmingham v. Ingalls, 257 Ala. 536, 549, 59 So.2d 914, 925.

The parties in 78707 (6 Div. 193) were represented by the same counsel in the court below and in this court as appeared for them in 78710 (6 Div. 194).

After reversal by this court both suits were dismissed by the complainants, but the trial court retained jurisdiction for the purpose of considering the question of the allowance of attorneys' fees out of the trust estates and a guardian ad litem was appointed to represent the minor beneficiaries of the trusts involved.

After a hearing wherein testimony was taken ore tenus, the trial court rendered a decree, made applicable to both cases, which reads as follows:

"Decree Fixing Attorneys' Fees

"This Cause coming on to be heard is submitted for a determination of a reason-

able attorneys fee for the several lawyers participating in said suit, including the Guardian ad Litem, who represented the beneficiaries of the trusts at the hearing, to be charged against the several trusts involved in this cause. (Fees fixed here shall be shared by Ingalls Trust 'A', a companion suit, in the proportion as hereinafter decreed and only a duplicate of this decree shall be enrolled in said cause.)

"There are two suits involved, but for all practical purposes, it was one piece of litigation. In cause numbered 78710, the following Ingalls Trusts were involved: 'B', 'C', 'D', 'E', 'F', and 'G'. In cause numbered 78707, Ingalls Trust 'A' was involved.

"The suits were vigorously prosecuted and defended. A major phase of the litigation involved rights of individuals and personalities, although the suits were filed against Trustees. The Court here is not concerned with fees which have, or are to be paid, for legal services to an individual. The fees here involved must be for legal services which inured to the benefit of the several trusts involved. Such benefit may arise from defending a Trustee or from bringing value to the trust estate.

"All of the Trustees were removed by the Court below. This resulted in an appeal. Pending a decision on appeal, Robert I. Ingalls, Sr., died. After his death, the Supreme Court reversed and remanded the cause for further hearing. The suits were later dismissed without prejudice to the rights of counsel to have fees allowed.

"The court will consider that the Trustees as such were successfully defended. It will also give consideration to effort made by solicitors for complainants seeking ways and means to require the Board of Directors of the Ingalls Iron Works Company, to exercise an option to purchase the stock of Robert I. Ingalls, Sr., deceased, under an agreement existing between him and the Ingalls Iron Works Company. Pressure by complainants to have this option exercised was resisted. The court desired that impartial and disinterested Trustees consider the propriety of exercising said option before it expired and finally appointed three disinterested Trustees for that purpose. Because of an application to the Supreme Court for a review of this ruling, said Trustees never functioned. Eventually the option was exercised and said application to the Supreme Court was dismissed by agreement. In the opinion of the Court the exercise of said option enured to the benefit of the Trust Estates. The Court is, therefore, of the opinion that all counsel involved are entitled to be paid fixed sums from the several Trusts for services rendered in behalf of said Trusts.

"It is difficult to determine with accuracy, or measure with certainty the exact amount that should be paid for services of counsel which enured to the benefit of the Trusts and what service enured to the individual. The Court recognizes the fact that in these suits counsel may have earned fees against their respective clients personally much greater than the fees properly chargeable against the Trust Estates.

"In arriving at the over-all figure for such fees; in case numbered 80667 (which is a related Ingalls Trust Case known as the Construction Suit, and of which the Court takes judicial knowledge) which involved Ingalls Trusts 'B', 'C', 'D', 'E', 'F', and 'G', substantially the same group of lawyers agreed that an over-all fee should not exceed $75,000.00. That case was vigorously contested and an appeal taken from the ruling of the lower court. The suits here considered may have involved more legal effort, but it is difficult for this court to conclude that over-all fees here should be of a value much in excess of twice the value there.

"For the purpose of fixing fees here, and for no other reason, each share of Ingalls Iron Works Stock is hereby fixed at $1,000.00. The corpus of each trust is

composed largely of such stock. Trusts in said suits, the number of shares in each and total value of said trusts as here fixed are as follows:

| Trusts | Shares | Value |
|---|---|---|
| 'A' | 1000 | $1,000,000 |
| 'B' | 1250 | 1,250,000 |
| 'C' | 500 | 500,000 |
| 'D' | 500 | 500,000 |
| 'E' | 1000 | 1,000,000 |
| 'F' | 2000 | 2,000,000 |
| 'G' | 500 | 500,000 |
| | Total | $6,750,000 |

"It is, therefore, Ordered, Adjudged and Decreed by the Court that the several attorneys' fees in these causes to be paid from the Trusts here involved, 'A', 'B', 'C', 'D', 'E', 'F', and 'G', are as follows:

| Name | Total Fee | Less Amount Paid | Balance Due |
|---|---|---|---|
| Cabaniss & Johnston | $31,500.00 | $3,000.00 | $28,500.00 |
| Waites & Tucker | 31,500.00 | 5,000.00 | 26,500.00 |
| Lange, Simpson, Robinson & Somerville | 60,000.00 | NONE | 60,000.00 |
| Francis H. Hare | 15,000.00 | " | 15,000.00 |
| Charles W. Greer | 15,000.00 | " | 15,000.00 |
| Clifford Reeves (Guardian ad Litem) | 3,500.00 | " | 3,500.00 |
| Total | $156,500.00 | | $148,500.00 |

"The total fees here awarded by the Court, (less any amounts already paid) together with one-half (½) of the Court costs in these causes are hereby taxed against the several Trusts, and shall be paid by the Trustees of said Trusts within thirty (30) days from the date hereof, in such proportions as the value of the corpus of each separate trust, as herein fixed, bears to the value of the aggregate corpus of all said Ingalls Trusts in this cause as here fixed. In making these payments, the Trustees shall look to:

"First: To cash on hand.

"Second: To so-called invested income.

"Third: The corpus of each of said trusts.

"Fourth: They may, and are hereby directed to make proper adjustments among the several trusts where amounts already paid do not correspond with this decree.

"One-fourth (¼) of the court costs herein accrued are hereby taxed against Robert I. Ingalls, Jr., and one-fourth (¼) of said costs are taxed against Ellen Gregg Ingalls, the Estate of Robert I. Ingalls, Sr., deceased, and M. F. Pixton, jointly, for all of which let execution issue at the expiration of thirty (30) days from the date hereof.

"Done and Ordered this the 15th day of July, 1953.

"E. M. Creel
Circuit Judge In Equity Sitting

"Filed in office July 15, 1953."

From that decree which was entered in No. 78707, as well as in No. 78710, appeals were taken to this court in each case by the guardian ad litem and by the trustees. Hon. Francis H. Hare has filed a cross appeal in each case. The firms Lange, Simpson, Robinson & Somerville and Waites & Tucker have separately made cross assignments of error in each case. Rule 3, Revised Rules of Practice in the Supreme

Court, 1955 Cum. Pocket Part, p. 221, Vol. 2, Code 1940, Tit. 7 Appendix; 261 Ala. XXI. The appeals were submitted here on separate records, but upon submission an order of consolidation was entered. The appeals from the decree entered in the cause bearing circiut court No. 78707 is our 6 Div. 648, while the appeals taken from the decree entered in 78710 is our 6 Div. 649.

The first question which we will consider is whether the trial court erred in ordering that attorneys' fees in any amount be paid out of any of the trusts to the attorneys who represented the respondents in the removal suits.

In Cornett v. West, 102 Wash. 254, 173 P. 44, a suit by a trustee to bring about the removal of his cotrustee, the Washington court, after observing that the contest was one mainly personal to the trustees, held each party should bear his own costs and disbursements, including attorneys' fees. To like effect are the holdings in Ingram v. Kirkpatrick, 43 N.C. 62, and in Henley v. Philips, 2 Atk. 48.

It has been generally recognized that the Ingalls removal suits stemmed from the controversy between Mr. Ingalls, Sr., and Mr. Ingalls, Jr., over the control of Ingalls Iron Works Company. See Ingalls v. Ingalls, 257 Ala. 521, 59 So.2d 898; First Nat. Bank of Birmingham v. Ingalls, 257 Ala. 536, 59 So.2d 914. That controversy was a bitter and continuing one. As Mr. Ingalls, Jr., pursued his efforts to gain control of the company through the use of the company stock held by the several trusts, he was met with opposition not only by his father but by the other trustees. So it must be admitted that by the time the removal suits were instituted there was very little harmony, if any, between Mr. Ingalls, Jr., and any of the other trustees. But we are convinced, after a reading of the voluminous records before us in these cases, and a rereading of many of the hundreds of pages contained in the transcripts filed here in the removal cases, that in defending the removal suits the trustees, Mrs. Ingalls, Mr. Pixton, and the First National Bank of Birmingham, acted not for selfish gain, not for reasons personal to themselves, but because they believed that it was unquestionably to the best interests of the trust estates that the management of Ingalls Iron Works Company not fall into inexperienced hands, as well it might have done if Mr. Ingalls, Jr., had been successful in his efforts at that time to obtain cotrustees who would align themselves with him against his father, who established the company, selected its key personnel, and had been in fact its guiding genius. The success and financial stability of Ingalls Iron Works Company was, of course, a matter of proper concern for the trustees inasmuch as the stock of that company composed practically all of the corpus of the several trusts.

■ We are convinced that the controversy was not "one mainly personal to the trustees" as was held to be the situation in Cornett v. West, supra, and the other cases cited above.

The respondent trustees were charged with fiduciary misconduct in the removal suits and the trial court, as shown above, removed them along with Mr. Ingalls, Jr. But this court reversed that action as to Mrs. Ingalls, Sr., Mr. Pixton and the First National Bank of Birmingham, as it did in the case of Mr. Ingalls, Jr. The respondent trustees named above were ably and successfully defended by their respective counsel. Mr. Ingalls, Sr., died shortly after the removal cases were submitted to this court, hence the trial court's action as to him was not reviewed.

In these cases, the trustees were, in our opinion, justified in employing separate counsel to maintain their defense. None of the respondents were trustees of all of the trusts involved and they were charged with different acts of fiduciary misconduct.

■ We are clear to the conclusion that the successful defense of the several trustees who were before this court in the

removal cases redounded to the benefit of the trusts involved and that such defense was made in good faith. Hence, we hold that the trial court did not err in ordering that counsel who represented these trustees be compensated for their services out of the trusts. Section 63, Title 46, Code 1940; Dent v. Foy, 214 Ala. 243, 107 So. 210; Wilkinson v. McCall, 247 Ala. 225, 23 So.2d 577; Coker v. Coker, 208 Ala. 239, 94 So. 308; Penney v. Pritchard & McCall, 255 Ala. 13, 49 So.2d 782, 22 A.L.R.2d 1430; King v. Keith, 257 Ala. 463, 60 So.2d 47; King v. Smith, 247 Ala. 1, 22 So.2d 336; Gordon v. Guernsey, 316 Mass. 106, 55 N.E. 2d 27; Zaring v. Zaring, 219 Ind. 514, 39 N.E.2d 734; In re Daly's Estate, 203 Misc. 851, 120 N.Y.S.2d 896; Matter of Bishop's Will, 277 App.Div. 108, 98 N.Y.S.2d 69.

Each and all of the trusts involved in the removal suits received benefits from the services rendered by the attorneys who represented the respondent trustees, hence we feel that the trial court was justified in requiring each of the trusts involved to bear a part of the costs of such representation. See Olson v. Foster, 42 Cal.App.2d 493, 109 P.2d 388. The beneficiaries (the then minor children) were the same in all of the trusts, except in Trust A, and in that trust they were contingent beneficiaries. The current beneficiaries of Trust A were and are the children's father and grandmother, who were parties to these suits as co-trustees.

Since all attorneys' fees and costs would come out of the same pocket, no matter what trust paid them, the trial court undoubtedly considered that the most practical way of taxing the fees would be proportionately against each trust. The trusts were so interwoven in these cases that each attorney was compelled to read or study every legal proceeding with respect to each and every trust. The trial court knew that there was no separability of attorneys' services as between the trusts involved in the removal suits.

We come now to a consideration of the contentions made in regard to the size of the fee, $60,000, awarded the firm of Lange, Simpson, Robinson & Somerville. In briefs filed here by the guardian ad litem and by the trustees it is asserted that the amount of the fee is excessive. On the other hand, that firm in support of its cross assignments of error strenuously and earnestly argues that the amount of the attorney's fee awarded to it is entirely inadequate.

In estimating the value of legal services, the following are among the elements material for consideration: time, labor, skill, experience, professional reputation, weight of responsibility, nature and value of services involved, and the results accomplished by the rendition of the services. Frazer v. First Nat. Bank of Mobile, 235 Ala. 252, 178 So. 441; King v. Keith, 257 Ala. 463, 60 So.2d 47. The trial court, in connection with a consideration of the opinion evidence proffered by qualified experts, may call to his aid his own estimate of the value of such legal services after considering the aforementioned elements and, generally speaking, the allowance rests within the sound judicial discretion of the trial court. Dent v. Foy, 214 Ala. 243, 107 So. 210.

However, this court has the right, as did the trial court, to look to the whole record on the question of the value of attorneys' services, and may treat opinions of witnesses as advisory and may render such decree fixing attorneys' fees as it deems right and proper under all the circumstances. King v. Keith, supra; Frazer v. First Nat. Bank of Mobile, supra. But we make such review with the presumption in favor of the ruling of the court below and will not set aside its decree unless we are convinced that that court ab·ed the discretion wisely vested in it. King v. Keith, supra.

In the light of the guiding principles, after a considerate and painstaking study of the records before us, including those brought here on the appeals from the removal decrees, we have become convinced that the trial court did not abuse his dis-

cretion in the allowance made to the firm of Lange, Simpson, Robinson & Somerville. His intimate knowledge of the case and all of its facets especially advantaged him to make up a correct decision as to the amount to be allowed and for us to disturb it would, in our opinion, be without warrant. King v. Keith, supra.

The trial court did erroneously include Trust B as one of the trusts involved in the removal suits. The second paragraph of the decree contains the statement that in cause number 78710 Ingalls Trusts B, C, D, E, F and G were involved. In the eighth paragraph of the decree it is said that Trust B is one of the trusts involved "in said suits." Then follows a tabulation of the trusts and the value of Ingalls stock held in each, including Trust B with a stock valuation of $1,250,000. The court then adjudges, orders and decrees: "* * * that the several attorneys' fees in these causes to be paid from the Trusts *here involved,* 'A', '*B*', 'C', 'D', 'E', 'F', and 'G', are as follows:" (Emphasis supplied.)

Obviously, the trial court overlooked the fact that Trust B had by amendment to the original bill been eliminated from consideration in case No. 78710, the only case in which it was originally involved. The only way that Trust B was involved was that Mr. Ingalls, Jr., who was a co-trustee of that trust, was removed although there was no prayer to that end.

The guardian ad litem and counsel for the trustees here argue that the trial court based its award of fees on values involved in the litigation and the inclusion of Trust B added $1,250,000 of value to the trust estates assertedly involved in the litigation and, hence, it is argued the court made the fees larger because of that erroneous inclusion.

■ We are not willing to say that the court fixed the fees on the basis of any percentage of value. It is logical to presume that, instead of fixing the fees on the

basis of the percentage of total value, such total value was recited in the decree in order (a) to show the importance of the litigation and (b) to furnish the basis for the proportion of the fees which each trust was ordered to bear.

For instance, the last paragraph of the decree ordered that the trustees should pay the fee awards out of the several trusts in the proportion that the value of each trust bore to the aggregate value of all the trusts. The court was, as heretofore indicated, evidently under the erroneous impression that a trustee of Trust B was still a respondent in the removal suit (78710) and hence listed the value of the stock in Trust B in order to fix the proportion of the fees awarded to the attorneys representing the respondent trustees which Trust B should bear.

We are of the opinion that the erroneous recitals in the decree to the effect that a trustee of Trust B was involved should not be considered as requiring a reduction in the amount of the fees awarded.

In any event, we are fully convinced, after a careful study of the records before us, that the total value of $6,750,000 attributed by Judge Creel to the trusts which he thought to be involved in these removal suits is not in excess of the value of those trusts which were actually involved.

We would like to observe at this point that we do not construe the decree rendered by the trial court as indicating that the amount of the fees allowed the firms representing the respondent trustees was based in any manner on services rendered by those attorneys in the so-called stock option litigation.

There is one other matter to which we should refer concerning the amount of the fee awarded to the firm of Lange, Simpson, Robinson & Somerville. The trial court made reference in the decree here under review to case No. 80667. That was another Ingalls case (the construction suit)

which the same trial judge had previously decided. That suit involved these same trusts, and also Trust B, and involved most of the same lawyers. The trial court fixed the attorneys' fees in that case and they were accepted.

Nothing involved in case No. 80667 was pertinent evidence in the two cases here under consideration. There was no occasion for introducing any part of the record made in that suit in evidence in these cases. No attempt was made to do so, nor was any part of the record in case No. 80667 noted in the notes of submission in these cases.

The appellants argue that it was reversible error for the trial court to refer in the decree with which we are presently concerned to case No. 80667 and to take judicial notice of that case.

■ It is quite true, that with exceptions not here relevant, a trial court cannot properly take judicial notice of another suit in his court for the purpose of supplying any evidence pertinent to the suit then being heard or submitted. For instance, if the trust instruments through inadvertence had not been put in evidence in cases 78707 and 78710, the trial court could not properly have supplied the omission by taking judicial knowledge of those trust instruments as introduced in case 80667.

■ But that is not the case here. The trial court in his reference to case No. 80667 was not supplying any evidentiary fact whatever in these cases. He was merely calling up his experience and knowledge gained from another case. A trial judge must not close his mind to previous experiences and refuse to fall back on his general knowledge of things and mark off all analogies in forming his judgment in matters of this kind. Yet, that is all that the trial judge did in this case in connection with case No. 80667. He used his own experience and knowledge gained in another

case to aid him in forming his judgment in this case. We think that was entirely proper. See Dent v. Foy, 214 Ala. 243, 107 So. 210.

We are clear as to the conclusion that the reference by the trial judge in the decree here under review to case No. 80667 should not in anywise affect the amount of the fees awarded or result in reversals.

■ We will next consider the size of the fee awarded the firm of Waites & Tucker. The appellants, the guardian ad litem and the trustees, contend that the amount awarded is grossly excessive. In support of their cross assignments of error Waites & Tucker assert that they have been grossly underpaid and they set out in their brief a summary showing the considerable extent of their labors in defending Mr. Pixton against the charge of fiduciary misconduct. Much of what we have said above in regard to the fee awarded the firm of Lange, Simpson, Robinson & Somerville has application to the Waites & Tucker fee. No one could possibly be in a better position to evaluate the services rendered by the lawyers in these cases than the late Judge Creel, who rendered the decree here under review. He was thoroughly familiar with all of the Ingalls litigation and was conversant with the services rendered by the several lawyers involved. We can see nothing in the records before us which would justify our reaching a different conclusion in regard to the amount of the fee awarded to Waites & Tucker.

The guardian ad litem and the trustees who have appealed to this court also complain of the amount of the fee awarded the firm of Cabaniss & Johnston, which firm has not made any cross assignments of error. We feel that it would but encumber this opinion to treat at length with the contentions of the appellants concerning the Cabaniss & Johnston fee. We say again that we cannot hold that Judge Creel abused the discretion vested in him in fixing the amount of the fees to which the

lawyers were entitled who represented the respondent trustees.

Hon. Francis Hare, who represented Mr. Ingalls, Jr., in the removal suits was awarded the sum of $15,000 as counsel fees to be paid from the several trusts. It is clear from a reading of the decree here under review that the trial court concluded that Mr. Hare should be paid that sum for the services rendered by him in connection with the stock option litigation. We think it clear that the trial court concluded that Mr. Hare was not entitled to any fees payable from the trust estates for the services rendered in the removal suits.

The guardian ad litem and the trustees who have appealed to this court contend that Mr. Hare was entitled to no fee payable from the trust estates. On the other hand, Mr. Hare vigorously contends that the services rendered by him in the removal suits preserved and protected the several trust estates and therefore he is entitled to be paid a reasonable fee for his services in that litigation.

■ The petition filed by Mr. Hare wherein he sought to have attorney's fees allowed to him did not expressly invoke the provisions of § 63, Title 46, Code 1940. The guardian ad litem and counsel for the appellant trustees contend that because of this omission the trial court was not justified in awarding Mr. Hare any fees to be taxed as costs in these cases. Reliance is had upon the holding of this court in the case of McGraw v. Tillery, 178 Ala. 253, 59 So. 567. That case dealt with the sufficiency of a petition as against apt demurrer. We have no question of pleading involved here and it appears from the records before us that all parties considered that the petition as filed by Mr. Hare was directed to the end that fees be awarded to him and taxed as costs under the provisions of § 63, Title 46, Code 1940. The case was tried on that theory and we are convinced that the rights of Mr. Hare to counsel fees, payable out of the trust es-

tates, if any, should not be denied him because his petition did not specifically make reference to the provisions of § 63, Title 46, Code 1940.

As we have heretofore shown, the complainants in case No. 78710 were the two minor beneficiaries of all of the trusts except Trust A, who sued by their guardian, Robert I. Ingalls, Jr., and Robert I. Ingalls, Jr., as trustee for the use and benefit of the beneficiaries, his two then minor daughters. The complainant in case No. 78707 was Robert I. Ingalls, Jr., as a trustee and beneficiary of Trust A. A reading of the voluminous records in these cases leads us to the inevitable conclusion that Mr. Hare was employed by Mr. Ingalls, Jr., not for the purpose of representing his minor daughters and protecting and preserving the trust estates, but for the sole purpose of effectuating a change of trustees in the several trusts involved to the end that he, Mr. Ingalls, Jr., might be able to have the stock held by those several trusts voted to return him to the presidency of Ingalls Iron Works, irrespective of what effect such a move would have on the corpus of the trusts.

Mr. Hare represented Mr. Ingalls, Jr., with his usual skill. He devoted much of his time and effort during the years when this litigation was pending to the prosecution of these suits. He has been paid by Mr. Ingalls, Jr., a considerable sum for those services. We make mention of that fact, not that it has any bearing on the right of Mr. Hare to be compensated out of the trust estates, but simply to show that the sum of $15,000 which was allowed Mr. Hare in the decree here under review and to which he refers as a "tip," is not all of the compensation by any means which he has received for his services in these cases.

■ We do not feel that we can hold that Mr. Hare was entitled to any fee for services rendered the complainants in these removal suits payable from the several trust estates. On the other hand, we

are not disposed to disagree with the conclusion reached by Judge Creel to the effect that the services rendered by Mr. Hare in connection with the stock option cases were of such a nature as to justify a fee of $15,000 payable from the trust estates.

What we have said above concerning Mr. Hare's right to be paid the sum of $15,000 out of the trust estates for services rendered in connection with the stock option cases is likewise applicable to the case of Mr. Charles Greer, who was also awarded the sum of $15,000 payable from the trust estates for similar services. Mr. Greer has not appealed or made any cross assignments of error.

There is no question here as to the right to or the amount of the fee awarded to the guardian ad litem by the trial court for his excellent defense of the claims for attorneys' fees filed by the several lawyers in these cases.

The decree of the trial court is affirmed in all respects except that none of the costs, including the attorneys' fees, are to be taxed against Trust B. The total fees awarded by the trial court (less any amounts already paid), together with one-half of the court costs in these cases are to be taxed against Trusts A, C, D, E, F, and G, and shall be paid by the trustees of said trusts within 30 days from the date the decree of this court reaches the register of the circuit court of Jefferson County, in equity, in such proportions as the value of the corpus of each of said trusts, as fixed in the decree of the trial court, bears to the value of the aggregate corpus of all of the trusts actually involved in the removal suits.

As so modified, the decree of the trial court entered in case No. 78707 (6 Div. 648) is affirmed.

As so modified, the decree of the trial court entered in case No. 78710 (6 Div. 649) is affirmed.

Modified and affirmed.

All the Justices concur.