S. Samuel Di Falco, S.
The testator, a resident of the District of Columbia, made his will there in December, 1927. He died in that month. His will was admitted to probate at his domicile, *206 and ancillary probate was granted in this county in July, 1928. The will created a trust, with a New York corporate fiduciary as one of the trustees, and pursuant to the decree of the court of the domicile, the net estate was paid to the trustees. The trust property has been in New York since that time, and the trust has been administered in this State. Pursuant to section 171 of the Surrogate’s Court Act, the Surrogate has entertained this accounting proceeding and has thus taken jurisdiction of the trust administration.
Two questions of construction of the will are presented by the petition of the accounting trustees.
The first question concerns the investment powers of the trustees. The will directs the executors to sell, whenever in their judgment the market price or value of the articles justifies such sale, all of the property of the testator, “ except such as shall already be invested in bonds of the United States of America and Federal Land Bank and Joint Stock Land Bank bonds ”. In the event of such sale, the testator’s direction to his executors is “to invest the proceeds of said property and any other cash in the hands of my said Executors in United States Grovernment bonds or other corporation bonds but only such bonds as are permissible under the law of New York State for savings banks within the State of New York to invest their deposits in. The particular bond issues into which the conversion is to be made I leave to the discretion of my Executors.”
All of the net estate of the testator, after payment of debts, expenses and taxes, he bequeathed to his trustees, “In Trust, to invest and from time to time reinvest the same in the securities hereinabove mentioned”. (Emphasis added.) He gave no other mandate or suggestion to his trustees for the investment of the funds. It is argued that because he used the word “ direct ” when referring to his executors and failed to repeat it in the reference to his trustees, he intended the words last quoted to be an additional grant of authority rather than a limitation on the power to make investments. It is impossible to read these words in their context as meaning anything else than that the trustees were allowed to invest only in the same bonds to which the executors were restricted.
Section 235 of the Banking Law specifies the bonds in which savings banks in the State of New York may invest their deposits. At the time of the testator’s death, the relevant provision was then numbered section 239. The will permits investments in such bonds “as are permissible” under the law of New York, and it is not disputed that the testator thus meant *207 to include such bonds as are from time to time authorized for savings bank investments. (Matter of Daly, 203 Misc. 851, 853 and cases cited.)
True it is, as petitioners contend, that a court may authorize a deviation from the terms of the will when it is impossible to purchase investments of the kind permitted, or where compliance with the terms of the trust would defeat or substantially impair the testator’s principal purpose in creating the trust. (Restatement, Trusts, § 167; Scott on Trusts [2d ed.], pp. 1171, 1701.) However, it is neither impossible nor difficult to comply with this testamentary mandate, and it cannot fairly be said that obedience to the testator’s command will frustrate his chief aims and purposes.
It is argued that compliance with the terms of the will is not possible because the statute which the testator has chosen as the standard sets up such conditions and limitations for savings bank investment that the statute cannot be used as a guide by a trustee. The trustees point out that subdivision 7 of section 235 of the Banking Law sets forth detailed conditions which railroad bonds must satisfy before they qualify for investment of savings bank assets, but that even if they measure up to all such requirements, not more than 25% of the assets of any savings bank can be invested in the' bonds made eligible by that subdivision; not more than 10% of the assets may be invested in the securities of any one railroad in this State; and not more than 5% of such assets in any one railroad outside the State. That limitation was in the statute when the testator made his will. The list of eligible bonds has been expanded since the testator’s death. Other subdivisions describe other bonds and limit the amount that may be invested in securities under any one sublivision and the amount that may be invested in the obligations of any one company (subds. 13,14). The maximum limit in each case is figured on a proportion of “ the assets of any savings bank.”
It is conceded by the trustees that the primary question is one of interpretation of the text of the will. If the text which carries the investment directions means that the trustee is limited to the same kind of bonds as a savings bank, there will be no difficulty in executing that command. (Matter of Wade, 270 App. Div. 712, 731, affd. 296 N. Y. 244; Matter of Daly, 203 Misc. 851, 854, supra.) If, however, the testator meant to embrace all the limitations and restrictions that would be applicable to a savings bank, including the limitations on the amounts that could be purchased, it would be difficult for a trustee to follow the statu *208 tory details. (See Matter of Daly, 203 Misc 851, supra; Matter of Brown, 1 Misc 2d 234; Matter of Edison, 4 Misc 2d 13; Matter of Scheftel, 155 N. Y. S. 2d 919.) It will be noted that in the cases last cited, it became virtually impossible for a trustee to follow' the savings bank standard when the law was changed to permit investment in common stocks because the limitations imposed on such purchases were based upon either the bank’s assets or its surplus and undivided profits, whichever figure would result in the smaller amount for such investments. The limitations on .bond purchases, however, are measured by total assets of a bank and would present no insuperable difficulty to a trustee if they were translated into terms of total trust assets available for investment. However, it is not necessary to determine whether there would be a mere difficulty or a virtual impossibility in adopting such limitations, because the court is of the view that the testator meant to limit his trustee only to the same kind of bonds that a savings bank could purchase, and that he did not intend to limit the trustee in the amount that it could invest in any one type of bond or in any one company.
The testator did not intend to make available to his trustees the entire field of investments open to savings banks. He authorized investment only in bonds, and in particular Government bonds and-11 other corporation bonds ”. But even at this point the testator drew the line still more firmly, because, he added the further restriction that the eligible corporation bonds could be 11 only such bonds as are permissible under the law of •New York State for savings banks”. Clearly he had in mind only the kind and quality of the bonds and not the amount that could be invested in each. If there could be any lingering doubt of this purpose at this point in the will, it is dispelled by the sentence immediately following: “The particular bond issues into which the conversion is to be made I leave to the discretion of my Executors. ’ ’ Within the limits of the list marked out by the testator, the trustees are given a broad discretion to select the particular bond issues. If they are further limited in the amount that can be placed in any one issue, the trustee concedes that such limitation is a severe one. Certainly if the testator had any such limitation in mind when he wrote that broad grant of discretion, he would not have failed to express the limitation.
The court therefore construes the will as limiting the trustees to the same kind of corporation bonds as a savings bank may from time to time be authorized to purchase as an investment. However, they are not limited by the terms of the will with *209 respect to the amount that may be invested in any one bond issue.
The further contention is advanced by the trustees that the prescribed investment policy of the testator will impair the purpose of the trust, because under modem conditions in the field of business and finance, an investment list that excludes any interest in equities such as common stocks will not adequately serve the needs of the educational institution which will ultimately be the sole beneficiary in perpetuity. It is said that the testator’s policy was formulated under conditions very different from those which now exist, that recent amendments to the Banking Law (L. 1952, ch. 705; L. 1955, chs. 610, 828) and the Personal Property Law (L. 1950, ch. 464) reflect legislative recognition of the need to change investment policy to meet modern conditions, that the testator could not have anticipated these conditions or the consequent adjustments of legislative policy, and that the achievement of Ms principal aims requires modification of the trust investment policy to meet these changed circumstances.
It is at best a matter of opinion whether the testator’s investment policy will better serve his particular objectives than would a different policy. Concededlv, his policy proved more Avise and more prudent in the early years of the trust administration than would the policy now suggested. The court cannot say that the testator Avould have modified that policy even if he could have clearly foreseen present developments. And in the long years ahead of us in this trust in perpetuity, no one can fairly say that his policy Avill not in the end prove better than anything suggested. So long as the trust provides a fair income for the beneficiaries, the court is not justified in permitting investments contrary to the testator’s explicit command.
The second question is whether the appointment as cotrustee of the “ Executive Officer ” of the educational institution was intended to refer only to the one in office when the testator died or to the executive officer from time to time. During the period of nearly 30 years of the trust administration the parties have construed the will to mean the person in office from time to time. Petitioners in their brief ask the court so to construe the Avill. A construction of the will accepted and acted upon for many years and eminently fair to the parties interested, Avill not be overturned by the court when the language of the will is capable of that construction. (Starr v. Starr, 132 N. Y. 154,159; Matter of Gulbenkian, 59 N. Y. S. 2d 445, 448; Matter of Shoff, 93 N. Y. S. 2d 626, 631.) The court therefore construes *210 the will as expressing the intention that the person who is in office as such executive officer shall during her term of office act as cotrustee of the trust. Letter of trusteeship will issue to the corporate fiduciary and the present executive officer.
Submit decree on notice construing the will and settling the account accordingly.